## PERKINS vs. GILES and TRACY.

Where it is obvious from the complaint and the papers referred to and made a part thereof, in an action to set aside an award and for other relief, that the plaintiff has no cause of action, and no title to any portion of the relief demanded, unless he can succeed in getting rid of the award; and it appears plainly that the complaint does not state a case for setting aside the award, the court may properly refuse to hear the evidence offered and order the complaint to be dismissed. It is not bound, and cannot be required, to try mere barren issues, which can be productive of no fruit, in the end ; and no exception will lie, for a refusal to hear evidence upon, or to try such issues.

An award cannot be impeached except for corruption, partiality or gross misbehavior in the arbitrators, or for some palpable mistake of the law or the facts. On these grounds courts of equity interfere to set aside awards, upon the same principles and for the same reasons which justify their interference in regard to other matters, where there is no adequate remedy at law. Nothing short of this will answer as a ground of interference, to set aside the determination of these tribunals.

Corruption, partiality, or gross misbehavior are all charges of a personal nature against the arbitrator, and relate only to his corrupt intentions, or unfair and improper conduct in the trial and determination of the matter before him.

An allegation, in a complaint, that an award " is partial and unjust" in certain particulars specified, is no charge that the arbitrator was guilty of any intentional partiality or injustice in making it ; nor does it imply, even, any such imputation upon the arbitrator.

The merits of an award cannot be re-investigated, and where there is no charge of corruption or misconduct in the arbitrators, nothing *dehors* the award can be pleaded or given in evidence to invalidate it, however unreasonable or unjust it may be.

Where no mistake of fact, in an award, was alleged in the complaint, nor was it averred, in terms, that the arbitrator had made a palpable mistake in any matter of law ; but it was averred that " said award is contrary to the lawful rights of the parties in real estate," specifying the error to be in a certain holding of the arbitrator; *Held* that this was rather in the nature of an objection and exception to an erroneous ruling or judgment in a matter of legal construction, than an allegation of a palpable mistake in such matter.

Mere *uncertainty*, in an award, forms no proper ground for the interference of a court of equity, to set it aside. If it is so uncertain that it cannot be executed, or enforced at law, it is void, and no resort to a court of equity is necessary, either for prevention or relief.

APPEAL from a judgment entered at a special term, dismissing the complaint.

The plaintiff is the owner of a saw mill, and the defend-

Perkins *v.* Giles.

ants own a grist mill. Both are supplied with water from the same pond and through the same race. The plaintiff's saw mill is located upon the race *above* the defendants' grist mill; hence, all the water used by the defendants must pass the plaintiff's saw mill. Both mills, and the whole of the water power, were originally owned by the same individual, Ezra Cuykendall. On the 14th of October, 1839, Cuykendall conveyed the grist mill to Mosher. That deed contained the following clause: "The said parties of the first part always reserving to themselves, their heirs and assigns, the surplus water over and above what shall be necessary for the propelling two run of stone and other necessary machinery in the grist mill." Also, the following clause: "Also, the party of the second part, his heirs and assigns, to *have the privilege* of using, maintaining, and keeping in repair all that part of the raceway leading from the above described premises to the mill dam, and *the privilege* of using, maintaining, and keeping in repair the said mill dam, and raising the said mill dam so high as shall be necessary, and to flow water on the lands above said mill dam, so much as is contained in a grant made by Wilhelmus Cuykendall to the said Ezra Cuykendall, bearing date the 7th day of June, 1833." Also the following: "The said party of the second part to keep always, and at all times hereafter, the aforesaid dam and raceway in good repair, and of sufficient height to secure the water as high as it has heretofore been usually kept, inevitable accidents excepted." The defendants hold the Mosher title. Previous to August 14, 1866, disputes had arisen between these parties in regard to the use of the said water power by the respective parties, each claiming that the other had so used said water power as to deprive the other of the use of his proportion thereof, and to the injury of the other. Also in regard to the duties of the respective parties in keeping the dam and raceway in repair, and in keeping the raceway of suf-

ficient capacity to allow sufficient water to flow therein for the use of both parties, and also in regard to the matters relating to said water power and to the use and enjoyment thereof. In order to settle *all of said disputes*, and to ascertain, determine, and settle upon the rights and duties of the several parties, and as between and towards each other, in regard to said water power, and the keeping in repair, *cleaning out, and, if necessary, enlarging the capacity of said raceway*, and in regard to all matters in any wise relating to said water power and said dam, and said raceway, as well as to what has heretofore taken place, as to what now is, and as to what shall hereafter be, the rights, privileges, and duties of the parties in regard thereto, the matter was submitted to Robert Howland, as sole arbitrator, who, among other things, was required to pass upon "the duties of the respective parties in regard to the further use of the said water power; the keeping in repair of said dam and said raceway; of enlarging said raceway, if necessary, and by whom the same shall be done." And in regard to every other matter or thing submitted, and to determine what costs and expenses of the proceedings, if any, should be paid by either party to the other. The said arbitrator proceeded to examine and view the premises, and to hear the testimony of the parties and of many other witnesses, and upon several sittings heard *all the proofs and* testimony, and after the whole had been submitted to him, and he had examined the said premises and seen the stream, the dam, reservoirs, raceway, and mills of both parties, and the condition and situation thereof, on or about the 1st day of February, 1867, he duly made and published his award and delivered a copy thereof to each of the parties.

This action is brought to set aside and vacate that award. The material facts are stated in the opinion of the court.

Perkins *v.* Giles.

*Cox & Avery*, for the appellant.

*D. Wright*, for the respondents.

*By the Court*, JOHNSON, J. .The action was brought to set aside an award, made by an arbitrator chosen by the parties, on matters submitted to him by them, by written submission, and for other relief. after such award should be vacated and set aside. The action was brought on for trial at a special term, by the plaintiff, who offered to prove the several matters alleged in his complaint. Objection being made to such proof, on the part of the defendants, and a motion for dismissal of the complaint, the court refused to hear the evidence, and disimissed the complaint, on the ground that no equitable cause of action was set forth in such complaint. The plaintiff's counsel excepted, and brings his appeal from the judgment of dismissal. The defendants had answered the complaint, and denied all the principal allegations therein, upon which the right of action was sought to be predicated.

It is perfectly obvious from the allegations in the complaint, and the papers referred to, and attached and made part of the complaint, that the plaintiff has no cause of action whatever, and no title to any portion of the relief demanded, unless he can succeed in getting rid of the award. As long as the award stands, it is conclusive between the parties, upon all the subjects mentioned and set forth in the complaint, as grounds or causes of action. If, therefore, it can be seen plainly that the complaint, taken together in all its parts, does not state a case for settting aside the award, the court properly refused to hear the evidence offered, and ordered the complaint to be dismissed. It was not bound, and could not be required, to try mere barren issues, which could be productive of no fruit in the end ; and no exception will lie, for a refusal to hear evidence upon, or to try such issues.

The grounds upon which an action in a court of equity to set aside an award may be maintained, are, fraud, mistake or accident. (*Story's Eq.* § 1451.) Or, as the rule is perhaps better stated by Chancellor Kent in *Woods* v. *Monell,* (1 *John. Ch.* 101,) "An award cannot be impeached but for corruption, partiality or gross misbehavior in the arbitrators, or for some palpable mistake of the law or the fact." On these grounds, courts of equity interfere to set aside awards upon the same principles and for the same reasons which justify their interference in regard to other matters where there is no adequate remedy at law. Nothing short of this will answer as a ground of interference, to set aside the determination of these tribunals of the parties' own selection.

Corruption, partiality or gross misbehavior, are all charges of a personal nature against the arbitrator, and relate only to his corrupt intentions, or unfair and improper conduct in the trial and determination of the matter before him. It is apparent upon the face of the complaint, that nothing of this kind is alleged against the arbitrator, who heard and determined the matters in difference between the parties in this case.

It is alleged in the complaint, as one of the grounds for setting aside the award, that it "is partial and unjust," in certain particulars specified. But that is no charge that the arbitrator was guilty of any intentional partiality or injustice in making it. Nor does it imply, even, any such imputation upon the arbitrator. The award may be partial and unjust in its operation against a party, where the arbitrator has been actuated by the most honest and sincere intentions and convictions. The merits of an award cannot be re-investigated, and where there is no charge of corruption or misconduct in the arbitrators, nothing *dehors* the award can be pleaded or given in evidence to invalidate it, however unreasonable or unjust it may be. (*Todd* v. *Barlow,* 2 *John. Ch.* 551.)

The other ground for setting aside an award is a palpable mistake made by the arbitrator, either of fact or of law. No mistake of fact is alleged, nor is it averred in terms that the arbitrator has made a palpable mistake in any matter of law. It does aver, however, that "said award is contrary to the lawful rights of the parties, in real estate," and specifies the error to be, that "it holds the gradual filling up of said dam, &c. as aforesaid, one of the inevitable accidents provided for in the deeds, and which constitutes an exception to the defendant's duty and obligation thereby imposed." This, it will be seen, is rather in the nature of an objection and exception to an erroneous ruling or judgment in a matter of legal construction than an allegation of a palpable mistake in such matter. I should be inclined to hold it sufficient, however, as an allegation, if the matter to which it refers fell within the rule and constituted a palpable mistake in regard to a matter of law. It does not follow at all, necessarily, that it was a palpable mistake in matter of law, even though we might hold it to be an erroneous ruling in such a matter.

But looking at the submission of the matters in controversy by the parties to the arbitrator, and his award, which are referred to and made part of the complaint, it will be seen that the subject of the filling up of the mill pond and raceway, and whose duty it was to clear them out and keep them in that condition, and what were the duties and obligations of the parties respectively in relation thereto, and toward each other, were each and all submitted to the arbitrator to be passed upon and determined by him. This he has done, covering the entire ground of litigation and controversy between the parties, and were we at liberty to review the determination of the arbitrator, as we do questions of law, upon exceptions, in actions, it is quite doubtful, at best, whether we could hold that the arbitrator was in error in the particular of legal construction

complained of. It is certain there has been no glaring or palpable mistake, in any matter of law. If wrong at all, which I do not admit, it is but an error of judgment upon the very point in controversy, which is not entirely clear in the plaintiff's favor. And this is no ground for interfering, according to all the authorities.

The obligation of the defendants, and those under whom they claimed, and derived title, by their deeds, was " to keep always, and at all times hereafter, the aforesaid dam and raceway in good repair and of sufficient height to secure the water as high as it has heretofore been usually kept." According to the allegations in the complaint, the pond formed by the dam and the raceway had become gradually filled with mud and silt to such an extent that they would not hold the same quantity of water which they did formerly, and had become of little or no use, comparatively, as reservoirs of water, for the purpose of operating said mills and machinery. The point in controversy was, whether it was not the duty of the defendants, at their own cost and charge, to excavate and remove this mud, &c. thus accumulated, according to the terms and conditions of the grant under which they held.

The arbitrator, upon all the facts before him, held and determined that the filling of the pond and raceway with sediment did not enter into the minds of the parties to the original grant, and that the excavation and removal by the grantees, of such sediment, was not within the contemplation of such parties. He construed the language of the deed as applying only to the embankment or structure forming the dam, and the banks of the raceway, " including all breastwork, timber, boards, gates and barriers, that are required to regulate the stream at the dam." The accumulation of sediment he considered to be one of those " inevitable accidents " referred to in the deed as an exception to the obligations of the defendants. This bottoming out the mill pond, created by the dam,

Perkins *v.* Giles.

might well, as it seems to me, be regarded as a different undertaking from that of keeping the dam in good repair. It is not within the terms of the deed, and after the most careful consideration I am not at all clear that the arbitrator was not entirely right in his determination.

Another ground alleged in the complaint is that the award is uncertain. I do not think mere uncertainty in an award forms any proper ground for the interference of a court of equity to set it aside. If it is so uncertain that it cannot be executed, or enforced at law, it is void, and no resort to a court of equity is necessary either for prevention or relief. But however this may be, the award here is not uncertain. It is as definite and certain as in the nature of things it could be made. Both the duty and the obligation of each party are distinctly specified and determined. If it is sufficiently certain to uphold a contract on the same subject, the award is good. (*Ackley* v. *Ackley*, 16 *Verm. R.* 450.) No one, I think, can doubt that a contract between the parties, like this award, on the subject complained of, would be sufficiently certain to create a valid obligation.

On the whole, it appears to me very clear that no grounds for impeaching and setting aside an award in a court of equity, are alleged or set forth in the complaint, and that the judge, at special term, was right in dismissing the complaint and refusing to entertain the case on the immaterial issues presented by the pleadings. The judgment, therefore, must be affirmed, with costs.

[Monroe General Term, March 1, 1869. *E. D. Smith, Johnson* and *J. C. Smith,* Justices.]