## SUPREME COURT.

### JAMES HALSTEAD agt. ROBERT SEAMAN.

*Award— of arbitrators— what are insufficient grounds for setting aside.*

A court of equity will not set aside an award of arbitrators, for error *either in fact or law*, as to matters within their jurisdiction, and there must be something more than error of judgment, such as misconduct or corruption, or a mistake of law or fact in the nature of a clerical error, and in general to be available, *this must appear on the face of the award or in some paper delivered with it.*

The supreme court *has no general supervisory power over awards of arbitrators*, and where arbitrators keep within their jurisdiction, their awards, in the absence of *corruption or misconduct*, will not be set aside for errors of judgment, either as to the law or to the facts.

The party alleging error must be able to show *from the award itself, that but for the mistake the award would have been different*, and unless restricted by the terms of the submission, arbitrators may disregard strict rules of law and evidence and decide according to their sense of equity.

The merits of an award cannot be reinvestigated, and where corruption or misconduct has not been made out, nothing *dehors* the award can be pleaded or given in evidence, to invalidate it, however unreasonable or unjust it may be.

An arbitrator has some power within his discretion, to determine how much evidence he will receive, but it is his general duty to hear all evidence *material* to the case, which is offered, and if arbitrators refuse to hear evidence *pertinent and material* to the controversy, it is such misconduct as will vitiate the award.

To furnish ground for the setting aside of an award for the refusal of the arbitrators to hear evidence it must be clearly shown that the evidence offered was *pertinent, competent* and *material.* It is not enough that the party attacking the award swears that the evidence offered *was material,* to bring it within the rule.

Where, as in this case, both parties were heard, each party giving his written statement of his version of the controversy to the arbitrators, and no witnesses other than the parties were heard, and where by the

Halstead agt. Seaman.

terms of the submission it was agreed that "the arbitration should be conducted and decided upon the principle of *fair and honorable dealing between man and man :*"

*Held,* that under such a submission where each party was heard in his own behalf, the arbitrators were not guilty of *misconduct* in refusing to hear other evidence, but that in such refusal they acted in the exercise of a discretion vested in them, by law and by the submission, and that they have been guilty of no misconduct which should constrain a court of equity to interfere in the award.

*Special Term, June,* 1876.

THIS action is brought to set aside an award of arbitrators. The following are some of the facts : Matters of difference existing between plaintiff and defendant in relation to what is designated and known in this case as the "Van Eisenberg matter," it was agreed between them that such differences should be submitted to Rufus Park, George W. Elder and John N. Billings, as arbitrators, to arbitrate, award, judge and determine of and concerning the same, and for the furtherance and better carrying out of said agreement and arbitration the parties thereto respectfully executed bonds. By the terms of the submission it was agreed that " the arbitration should be conducted and decided upon the priciple *of fair and honorable dealing between man and man.*" The plaintiff alleges in his complaint that the persons so named as arbitrators proceeded to sit and hear the matter, but without being sworn or taking any oath. That, at such hearing, the plaintiff offered and insisted upon producing witnesses and evidence and testimony, and having the same heard and considered by said arbitrators, but they refused to hear any testimony or evidence or listen to any witnesses or to any thing save the statements of plaintiff and defendant. That plaintiff renewed and repeated his request, and finally John N. Billings, one of said arbitrators, proposed to examine witnesses offered by plaintiff, but the other arbitrators refused to hear any witnesses, or receive or consider any evidence or testimony, and thereupon the two, viz., Park and Elder, made and signed

Halstead agt. Seaman.

the award. The defendant alleges in his answer that both parties attended before said arbitrators, and were fully heard, neither objecting that the arbitrators were not sworn. The statements of each party were, by consent, taken as evidence, and were submitted in writing, with oral explanations and suggestions, and though the plaintiff spoke of calling witnesses the arbitrators only refused to take testimony, because, upon the facts in respect to which they found that the parties by their own statements substantially agreed, they were able satisfactorily to determine the matters submitted to them according to the terms of the submission, and did, after the parties had been fully heard, make the award, for the setting aside of which this action is brought. Other facts appear in the opinion.

*Mr. Scudder*, for plaintiff.

*Mr. Nash*, for defendant.

LAWRENCE, *J.* — There can, I think, be no doubt, from the evidence that Halstead and the arbitrator Billings both requested that witnesses should be sworn, after the statements of the two parties had been read and when it was found that those statements differed so widely from each other. Billings, Patterson and Halstead all testify to this effect, and such discrepancies, as may be apparent, in the evidence of these witnesses, as to the time when such request was made, serve only to confirm the truth of their declarations that such request was made.

The defendant, in his answer, alleges, that the statement of each party was, by consent, taken as evidence, and submitted in writing, with oral explanations and suggestions; and, although the plaintiff spoke of calling witnesses, the arbitrators only refused to take testimony, because upon the facts in respect to which they found that the parties, by their own statements, substantially agreed they were able satisfac-

torily to determine the matters submitted to them according to the terms of the submission, and did, after the parties had been fully heard, make the award, a copy of which is annexed to the complaint. In his evidence the defendant states : " That Sheldon and Brown's names frequently occurred in the reading of Mr. Halstead's statement, and as we went along we would have some argument about it, but there was no such offer made, that I heard, of offering or submitting at all Sheldon and Brown as witnesses; I did not hear any such thing."

In reply to the question : " Did Mr. Halstead ask, at that meeting, to have Sheldon and Brown called in as witnesses ?" he answers, " No, sir, he didn't, that I heard at all, *I am quite sure, positive, that it was not done at all.*" The defendant also testifies that there was nothing said about any particular item in his account, and that he never heard of any particular items until " yesterday."

Apart from the fact, that in respect to the item of $500, the defendant is at variance with the arbitrator Park, and with the plaintiff. I think that his answer admits that the plaintiff was desirous of calling witnesses, and that as the answer was verified at a date when the particulars of the arbitration were fresh in his recollection, it is much more likely to have been accurate in its statement of what occurred at the meeting of the arbitrators than his testimony at the trial.

The arbitrator, Mr. Park, thinks there was nothing said about the calling of witnesses, at the first meeting, and is confident that there was nothing said about calling Sheldon and Brown, as witnesses, at that meeting, and afterward he states that the plaintiff did not suggest bringing any witnesses, but upon being asked : " Do you mean that he didn't state, in any manner, that he could bring testimony before you ?" he answered, " I think not; I don't remember that he suggested that he could."

The testimony of the defendant and of Mr. Park does not,

in my opinion, overcome the testimony offered on the part of the plaintiff to the effect that the arbitrators were requested by Billings and by the plaintiff to hear evidence.

This case must, therefore, in my view of the evidence, be determined on the assumption that such a request was made; and the question presented, therefore, is whether such refusal is ground for vacating the award.

In the case of *The Morris Run Coal Company* agt. *The Salt Company of Onondaga* (58 *N. Y.*, 667), the court of appeals held, that a court of equity will not set aside an award of arbitrators for error, *either in law or fact*, as to matters within their jurisdiction, and that there must be something more than error of judgment, such as misconduct or corruption, or a mistake of law or fact in the nature of a clerical error; and that, in general, to be available, *this must appear on the face of the award, or in some paper delivered with it.* And in the more recent case of *Fudickar* agt. *The Guardian Mutual Life Ins. Co.* (62 *N. Y.*, 392), it was held, that the supreme court *has no general supervisory power over awards of arbitrators*, and that where arbitrators keep within their jurisdiction, their awards, in the absence of *corruption or misconduct*, will not be set aside for errors of judgment either as to the law or to the facts. It was further held in that case that the party alleging error must be able to show, *from the award itself, that but for the mistake the award would have been different*, and further, that unless restricted by the terms of the submission, arbitrators *may disregard strict rules of law and evidence, and decide according to their sense of equity*. I do not understand the learned counsel for the plaintiff, in this case, to claim that there is any such mistake apparent upon the face of the award as to authorize a court of equity to grant him relief, within the doctrine laid down in the cases just referred to and by the numerous authorities which those cases are designed to follow; but I understand him as contending that the refusal to hear witnesses was in itself *such misconduct* on the part of the

arbitrators, as to require the setting aside of the award. On this point counsel has cited numerous authorities from the English reports, which I have examined. Some of them do not appear to me to sustain the counsel's position, but as the rule which must control this case has been so fully settled, by the courts of our state, I do not deem it essential to notice those authorities specifically, further than to say that the case of *Phipps* agt. *Ingram* (3 *Dowl.*, 669) appears, at the first blush, to be a very strong authority in the plaintiff's favor. The doctrine of the case, as stated in the head note, is as follows: " The refusal of an arbitrator to examine witnesses is sufficient *misconduct* on his part to induce the court to set aside his award, though he may think he has sufficient evidence without them." But upon examining that case it will be found that while Lord ABINGER said, " There is no imputation upon Mr. Stocken's character, but I think he was bound to examine the plaintiff's witnesses," and while Baron PARK added, " There is no misconduct in the bare sense of the word," it distinctly appeared that the plaintiff had produced, at the first meeting, *seven* witnesses, and that the arbitrator, after having inspected the phaeton, which was the subject of the controversy, decided that there was no necessity for calling witnesses, and that he subsequently heard the defendant's witnesses, and rendered his award in the defendant's favor. It was also alleged that the arbitrator lived at the defendant's house, and other circumstances, showing that he had unduly favored the defendant, were stated. I agree that this case shows strange misconduct and gross partiality on the part of the arbitrator, and that the case may well have been rested upon that ground; but I do not see how it could have been held that there was no imputation upon the arbitrator. His conduct seems to have been inexcusable. In the case of *Spettigue* agt. *Carpenter* (3 *P. Wms.*, 361) it appeared that there were several stated accounts between the parties whereby considerable sums were due from the defendant to the plaintiff; but the arbitrator, without any regard to those stated

accounts, made up an account in his own way, bringing in the plaintiff indebted to the defendant twenty-five pounds, and awarding the former to assign over to the latter a mortgage which he had on the other's estate, upon which mutual releases were to be given. The plaintiff, understanding what award the arbitrator was about to make, desired the arbitrator to defer making his award until he should satisfy him as to some things which the arbitrator took against him, though it was within two or three days before the time for making the award was out. The request being denied, the chancellor set aside the award. In that case there were accounts stated which showed that the defendant was indebted to the plaintiff. Being stated accounts, it must be assumed that they had been examined and found correct by both parties (*Lockwood* agt. *Thorne*, 1 *Ker.*, 170). They were, therefore, conclusive between the parties, unless impeached for fraud or mistake. Such fraud or mistake was not alleged, and the fact that the arbitrator, in the face of such accounts, found in favor of defendant, thereby disregarding the accounts, was strong evidence of gross partiality and misconduct on the part of the arbitrator, and that appears to be the true ground on which the decision must be maintained. The elementary writers lay down the rule that an arbitrator has some power within his discretion to determine how much evidence he will receive, but it is his general duty to hear all evidence material to the case which is offered (*Morse on Arb.*, 142, 143). And Russell, in his work on arbitration, says " that declining to receive evidence on any matter is, under ordinary circumstances, a delicate step to take, for the refusal to receive proof where proof is necessary is fatal to the award."

The leading case in this state on this subject seems to be *Van Cortlandt* agt. *Underhill* (17 *Johns.*, 405), in which it was held that if arbitrators refuse " to hear evidence *pertinent and material* to the controversy, it is such misconduct as will vitiate the award in the court of chancery" (*Per* SPENCER, *Ch. J.*, *p.* 408). This case was cited with approval by ANDREWS,

J., in his opinion, in the case of *Fudickar* agt. *The Guardian Mutual Insurance Company* (*supra*). The learned judge says: " If an arbitrator refuses to hear competent evidence on the merits, his award will be set aside " (*citing Van Cortlandt* agt. *Underhill*).

This case, then, appears to turn upon the question whether the evidence offered by the plaintiff was pertinent, competent and material. Precisely what Sheldon and Brown could have proved does not appear. It appears that they were the attorneys for Dr. Von Eisenberg, whose affairs were the cause of this controversy; but I do not understand from the evidence that they knew any thing about the advances made by the defendant, nor of the agreement between the plaintiff and the defendant.

If my apprehension of the testimony is correct, how could the evidence of Sheldon and Brown, even if competent, be pertinent or material. In regard to the alleged objectionable items in the defendant's account, as I understand the testimony, the defendant's objection to and the denial of those items was laid before the arbitrators, and thereupon the defendant was compelled to swear to his account. Sheldon and Brown are not alleged to have known any thing about those items, nor were any other witnesses mentioned by name, or otherwise, who could throw light upon the subject. The suggestion of the plaintiff's counsel that Halstead swears that the evidence *was material* does not seem to bring this case within the rules established by the cases in this state before referred to. It not being made out that Sheldon and Brown's testimony was material or pertinent to the matter in controversy the arbitrators cannot be said to have been guilty of *misconduct* in refusing to receive such testimony, and if there was any error in the defendant's account, the evidence does not establish that any competent or material evidence on that point was offered by the plaintiff beyond his own statement which was laid before the arbitrators, and must be assumed to have been considered by them. It seems to be

the settled doctrine in this state that the merits of an award cannot be reinvestigated, and where corruption or misconduct has not been made out, nothing *dehors* the award can be pleaded or given in evidence to invalidate it, however unreasonable or unjust it may be (*Perkins* agt. *Giles*, 53 *Barb.*, 342; *Todd* agt. *Barlow*, 2 *J. Ch.*, 551; *Herrick* agt. *Blair*, 1 *id.*, 102; *Perkins* agt. *Giles*, 50 *N. Y.*, 228). In the last cited case the court of appeals held that "where no charge of corruption or of bad faith in the arbitrators is made, mere errors of judgment are no grounds for setting aside an award, and neither party will be allowed to prove for that purpose that the arbitrators decided wrong *as to the law or the facts.*" Now, in this case, both the parties were heard. Each party gave his written statement of his version of the controversy to the arbitrators. No witnesses other than the parties were heard, and by the very terms of the submission it was agreed that "the arbitration shall be conducted and decided upon the principle *of fair and honorable dealing between man and man.* Under such a submission I am not prepared to say that where each party was heard in his own behalf the arbitrators were guilty of misconduct, in refusing to hear other evidence, and the case differs essentially in these respects from the English cases referred to by counsel, upon which I have above commented. In the case reported in the third of *Dowling* the witnesses of one party were heard, and not those of the other, and in the case in *Peere Williams'* *Reports* (*vol.* 3), the arbitrators disregarded accounts stated, found against the plaintiff in the face of those accounts, and refused to hear the plaintiff in regard to the same, upon request made before award found. In neither of these cases were the parties accorded such a hearing as the parties obtained in this case, and upon all the testimony it seems to me that the arbitrators, in refusing to hear other testimony, acted in the exercise of a discretion, vested in them by law and by the submission, and that they have been guilty of no

conduct which should constrain a court of equity to interfere with the award which they have made.

Finally, the language of chancellor KENT, in *Herrick* agt. *Blair* (1 *Johns. Ch.*, 102), seems appropriate to this case: "The arbitrators are judges of the parties' own choosing, their proceedings and award are treated with great liberality, and even a mistake upon a doubtful point often will not open an award. These principles have been declared and asserted in a series of decisions, all going to the same point, and containing a weight of authority not to be resisted" (*citing numerous cases*).

And PECKHAM, J., in delivering the opinion of the court in *Perkins* agt. *Giles*, says: "When lord chancellor HARDWICKE delivered the opinion in *Lingood* agt. *Eade* (2 *Atkyns*, 501), it was difficult to sustain an award in the court, no matter how carefully made. 'But the rule in their construction has since greatly changed. *They are now favored in law.* Presumptions are made to sustain them; courts of equity enforce them like any other contract of the parties when it is necessary to resort to such courts. They correct mere mistakes in awards not of a judicial nature, and then enforce them'" (50 *N. Y.*, 235).

To recapitulate:

I. I find that there was no misconduct on the part of the arbitrators in not receiving further evidence, in view of the terms of the submission, and of the fact that both parties had been heard.

II. That there was nothing to show that the evidence of Sheldon and Brown *was material, or pertinent to the matters in controversy.*

III. That no corruption or partiality or fraud on the part of the arbitrators was shown by the evidence on the trial.

IV. That on the face of the award there is no error.

V. That even conceding that there were items in the account which the arbitrators should not have allowed, as against Mr. Halstead, it nowhere appears from the award

Halstead agt. Seaman.

itself that but for such alleged error the award *would or should have been different.*

As the defendant has pleaded the award in his answer as a counter-claim, I am of opinion that he is entitled to judgment for the amount thereof, with interest thereon, and for the costs of this action. Findings may be settled on five days' notice.