ALFRED E. BRUSH ET AL. v. AARON C. FISHER ET AL.

| 70 | 469 |
| 135 | ¹503 |
| 135 | ¹504 |

*Arbitration and award—Fraud and mistake—Equity—Waiver of objection to selection of arbitrator—Lease—Submission of rental value of premises.*

1. Courts favor awards made by tribunals of the parties' own choosing, and are reluctant to set them aside, and every presumption will be made in favor of their fairness, and the burden of proof is upon the assailing party, which proof must be clear and strong.

2. Under the circumstances of this case, the Court is not prepared to say that the rental value fixed by the arbitrators is any evidence of partiality or of misconduct on their part.

3. The commission of an error of law or fact by arbitrators, unless so gross as of *itself* to furnish clear proof of corruption and fraud, is no ground for setting aside their award.

4. The right of the parties to an arbitration to object to the selection of a third arbitrator by lot, if existing, is waived by their proceeding to a hearing with full knowledge of such fact.

5. Arbitrators are expected to frame their decisions on broad views of justice, which may sometimes deviate from the strict rules of law.

Appeal from Wayne. (Jennison, J.) Argued April 10, 1888. Decided June 8, 1888.

Bill to set aside an award by arbitrators. Defendant Fisher appeals. Decree below reversed, and one entered dismissing bill. The facts are stated in the opinion.

*F. A. Baker,* for complainants, contended:

1. Equity has jurisdiction to set aside awards, where the arbitrators are guilty of fraud, misconduct, or mistake: citing *Railway Co. v. Callanan,* 61 Mich. 26; *Van Cortlandt v. Underhill,* 17 Johns. 405; *Rand v. Redington,* 13 N. H. 72.

2. Undue bias or partiality would be equivalent to fraud or misbehavior on the part of the arbitrators; citing *Craft v. Thompson,* 51 N. H. 536; *Allen v. Ranney,* 1 Conn. 571, and note; *Brown v. Green,* 7 Id. 536, 542.

3. It is not a question of *actual* corruption; citing Morse, Arb. 533, 534.
4. An award was set aside because arbitrators received a statement in writing from one of the parties in the absence of the other, without his consent; citing *Cleland v. Hedly*, 5 R. I. 163; *Sisk v. Garey*, 27 Md. 401.
5. Arbitrators must not consider themselves agents for the parties who nominated them; citing *Watson v. Northumberland*, 11 Ves. 160.

*C. I. Walker* (*C. A. Kent*, of counsel), for defendants, contended as stated in the opinion, citing the authorities therein referred to.

LONG, J. On November 23, 1871, Edmund A. Brush, deceased, executed to the defendant Aaron C. Fisher a lease for five years, at $200 a year, of lots 8 and 9, in block 10, of the Brush subdivision of part of park lots 17 and 18, on the east side of Woodward avenue, in the city of Detroit. The lots have a frontage on Woodward avenue of 100 feet, and are 200 feet deep, and are on the corner of Woodward avenue and Erskine street.

Mr. Fisher, in addition to the payment of the rent, agreed within two years to erect a brick building suitable for a dwelling, at least two stories high, and equal to 25 feet front and 36 feet deep, on the two lots leased, 50 feet back from the front of the lots, and erect no building within 20 feet of Erskine street. He further agreed to pay all taxes and assessments levied against the property during said term.

Among other provisions, the lease contained the following:

"And it is further covenanted by and between the parties hereto that, at the expiration of said term of five years, the party of the first part, his executors, administrators, or assigns, shall have the right, in his or their election, to purchase and take of and from the party of the second part, his executors, administrators, or assigns, the buildings and improvements erected by him or them, or being on said premises, at a valuation thereof, not to exceed $20,000, to be made by three disinterested persons, to be chosen one by each party.

and the third by those referees if they disagree, and upon such purchase, to re-enter upon said premises, and the same to have again as in their former estate and right.

"If the party of the first part, his executors, administrators, or assigns, elect not to make such purchase, then this lease, at the then rental value of the premises, to be determined by a reference in the manner above set forth, and upon the other terms and conditions above set forth, shall stand continued for another term of five years. And, in a like manner, at every expiration of every succeeding term of five years the same election as above reserved by the party of the first part, his executors, administrators, or assigns, shall be had; and if the buildings and improvements, as above limited, are not purchased and taken, then this lease, at the then rental value, to be determined as above prescribed, and upon the other terms and conditions above set forth, shall stand continued for another term of five years."

Mr. Fisher entered into possession of the lots under this lease, and erected a first-class dwelling-house thereon, with a barn and other improvements, the whole expense of which buildings and improvements was between $23,000 and $24,000, and which he now values at $20,000. These premises Mr. Fisher uses solely for a residence, and claims to have built the same for a family residence and homestead, and not as an investment for capital.

The first term of five years under this lease expired January 1, 1877.

The annual rental was fixed, by the mutual agreement of the parties, for the second term of five years, at the same amount as for the first term, viz., $200. At the expiration of the second term of five years, the annual rent was fixed, by the mutual agreement of the parties, for the third term, at $300 per year, and the same was indorsed on the lease.

At the expiration of the third term of five years, the parties were unable to agree on the amount of the annual rental for the fourth term, and the parties submitted to have the same fixed by arbitrators as provided in the lease. The complainants, who are trustees of the estate of Edmund A.

Brush, deceased, appointed Edward J. Stimson, as one arbitrator, and defendant Fisher appointed Mr. Alanson Sheley the other. The arbitrators not being able to agree on the rental value of the premises, or on the third arbitrator, they finally selected as third arbitrator Mr. Alvah E. Leavitt by lot. After hearing the parties, Mr. Sheley and Mr. Leavitt agreed upon an award fixing the rental of the premises for the fourth term at an annual rental of $200. Mr. Stimson did not join in this award, or agree to its terms. The bill is filed in this cause in the circuit court for the county of Wayne, in chancery, to set aside and vacate this award.

On the hearing in the court below the award was set aside, and vacated and held for naught, with costs against defendant Fisher, who brings the case into this Court by appeal from such final decree.

It was said by this Court in *Port Huron, etc., Ry. Co. v. Callanan*, 61 Mich. 26 (34 N. W. Rep. 678), that—

"There is power in a court of equity to relieve against awards in some cases where there has been fraud and misconduct in the arbitrators, or they have acted under manifest mistake, and, perhaps, in some defined and undefined cases. But it is evident that there are great objections to any general interference by courts with awards. They are made by a tribunal of the parties' own selection, who are usually, at least, expected to act on their own view of law and testimony more freely and less technically than courts and regular juries. They are also generally expected to frame their decisions on broad views of justice, which may sometimes deviate from the strict rules of law. It is not expected that, after resorting to such private tribunals, either party may repudiate their action, and fall back on the courts. And equity, on whatever pretext it may intervene in such cases, does so upon the reason that the tribunal has not really acted within the lines of the duty laid upon it, and has not in fact carried out the agreement under which it has obtained authority to proceed."

It is charged in this case that the arbitrators chosen were

guilty of undue partiality and misconduct, and that their award was properly set aside by the court below; and counsel for complainants bases his argument in support of these charges upon the fact, principally, that the parties to the lease fixed the rent in 1871 at $200, and in 1882 at $300, a year; while in 1887 the arbitrators fix the amount of the annual rental at $200, the same as fixed by the parties in 1871, though it is claimed the property for the last 15 years has greatly increased in value, and become more desirable for residence property.    This increase in value is admitted by defendant Fisher. The assessed value of the lots has increased, from $1,800 in 1871, to $17,500 in 1887.

It is claimed on the part of defendants, and defendants Sheley and Leavitt, two of the arbitrators, testify, that because of the increased value the taxes had increased, and that the rental should be reduced, instead of increased.    It is therefore claimed by complainants—

1. That the lease, the contract between the parties, very clearly contemplates that, if the lots increase in value for residence purposes, the ground-rent is to be increased, and if they decrease in value the ground-rent is to be decreased, and that that is what the contract means.

2. That any award made upon the theory that an increase in the value of the property necessitates and justifies a reduction in the ground-rent is a violation of the contract between the parties, and that these arbitrators, in making such an award, have not acted within the lines of duty laid upon them, and have not carried out the agreement under which they obtained authority to proceed.

Courts, however, favor awards made by tribunals of the parties' own choosing, and are reluctant to set them aside, and every presumption will be made in favor of their fairness, and the burden of proof is upon the party seeking to set them aside, and the proof must be clear and strong. *Morgan v. Mather,* 2 Ves. Jr. 15; *Herrick v. Blair,* 1 Johns. Ch. 101; *Davy v. Faw,* 7 Cranch, 171; *Van Cortlandt v. Underhill,* 17 Johns. 411; Morse, Arb. 531, 544.

It appears from the assessment rolls put in evidence in the case in the court below, and from the testimony taken in the case, that up to 1875 assessments were made upon the basis of 30 per cent. of the cash value of the property. In 1876 the system was changed, and a cash valuation substituted. The assessment at 30 per cent., in 1872, of $2,700, would make the cash valuation at that time of $9,000. In 1876, the last year of the first term, the assessment was $13,325. In 1881, the last year of the second term, it was assessed at $13,500. In 1886, the last year of the third term, it was assessed at $14,350. In 1887 the assessment was $17,500. Before the arbitrators it was conceded that the property was worth $25,000.

It appears, also, that, while the property was rapidly increasing in value,—over 100 per cent. in 16 years,—the taxes were also rapidly increasing in amount from year to year. The average of general taxes for the first term of five years was $213.10  The average tax for the next term of five years was $282.54 per annum. The average tax for the third term of five years was $386.96, making the tax for the third term almost double the first term. The tax for 1887 is still greater, being $451.39.

In addition to these regular taxes, there were special taxes and assessments paid by the lessee; at the time of making the lease, $500 for paving tax; in 1874, also a paving tax of $436.84; in 1882 another paving tax of $195. Besides these, there were other taxes for sewers, sidewalks, etc., the amount of which is not given. It also appeared that preparations were being made to pave Erskine street, during 1887, at an expense of from five to six hundred dollars. These improvements, and the increase of the property, inure to the benefit of the lessor, while it has increased the rental by taxation.

The lease is a somewhat peculiar one. It is a perpetual lease, so far as the lessee is concerned. He has no right to avoid it or give it up; but it is not perpetual upon the part

of the lessor. He is at liberty, at the expiration of any term of five years, to set aside the lease, and take the property into possession, if he should see fit to do so, upon the terms therein named, viz., of paying the then value of the improvements under the limitations of the lease. The lessee was bound to erect a building, as hereinbefore stated, and was not only to pay the rental, but to—

" Bear, pay, and discharge all taxes and assessments whatsoever, laid, assessed, or becoming payable during said term on said premises."

He could not let, transfer, or assign said premises, or any part thereof, or any interest therein, without the written consent of the lessor; and if the lessor elect, at the expiration of any five years term, to take back said property, he is to purchase the buildings and improvements erected and being on said premises at a valuation thereof, not to exceed $20,000, to be fixed by disinterested persons. If the lessor does not elect to make such purchase, the rental value for another term of five years is to be determined by a reference if the parties do not agree, and so on at the end of every five years.

There is an express condition in the lease that if the rent, taxes, or assessment shall not be paid when the same is due and payable, or if the lessee should not observe, keep, and perform all the covenants and conditions of the lease, everything in the lease to be performed by the lessor shall cease, determine, and be utterly void, anything therein to the contrary notwithstanding; and the lessee covenants in such case, at the determination of said lease, under these provisions, that he will peaceably and quietly surrender and yield up said premises; and the lessee agrees to waive any and all notice or notices which may be required by law to be given to him by the lessor, in the event of any default being made on his part, of the demand of possession and of said premises.

Undoubtedly, the arbitrators, in fixing the rental value of the premises took into consideration many if not all the considerations herein mentioned, and upon the whole case thus submitted fixed the rental at $200 per annum, and we are not prepared to say that the value fixed by them, under the circumstances, is any evidence of undue partiality, and we see in it no evidence of any misconduct on the part of the arbitrators; but it would seem that these stringent provisions in the lease would have some effect upon the rental value.

There is no charge in the bill that the arbitrators committed any error of fact or law in fixing the rental value of the premises, or that the sum fixed was an unreasonably low one; and, had there been, it would have been no ground for setting aside the award that the arbitrators had committed an error of fact or law, unless the error was so gross as of itself to furnish clear proof of corruption and fraud. Morse, Arb. 293, 298; *Water-Power Co. v. Gray*, 6 Metc. 131; *Burchell v. Marsh*, 17 How. 344; *Anderson v. Taylor*, 41 Ga. 10; *Lester v. Callaway*, 73 Id. 731; *Kirten v. Spears*, 44 Ark. 166; *Railroad Co. v. Myers*, 18 How. 246; *Winship v. Jewett*, 1 Barb. Ch. 173; *Perkins v. Giles*, 53 Barb. 342; *Van Cortlandt v. Underhill*, 17 Johns. 405.

It appears that the third arbitrator, when the two chosen by the parties were unable to agree, was chosen by lot, and it is claimed by the complainants that this was not a competent way of making choice; that the lease' contemplates that the third arbitrator will be chosen by an exercise of judgment by the first two arbitrators,—that is, by a comparison of views, and an adjustment of differences. And counsel cites in support of this proposition, *In re Cassell*, 9 Barn. & C. 624; *Ford v. Jones*, 3 Barn. & Adol. 248; *In re Greenwood*, 9 Adol. & E. 699. It appears, however, that Mr. Thompson, one of the trustees of the Brush estate, assented to the selection, and that the parties, with full knowledge of the manner in which

the choice was made, submitted their case, and made no objection to the arbitrator until the award was made by them If the parties had a right to object to this mode of making a choice they must be held to have waived it by their conduct in proceeding to a hearing knowing the fact. 2 Pars. Con. 707; Morse, Arb. 242; *Neale v. Ledger*, 16 East, 51; *In re Tunno*, 5 Barn. & A. 494.

It is also contended by complainants that Mr. Sheley had formed an opinion as to the rental value of the premises before the time of his being appointed an arbitrator, and that such preconceived opinion is a sufficient reason for avoiding this award, inasmuch as the complainants were not aware of such bias at the time of submitting the case.[1] It appeared, upon Mr. Sheley's examination in the present case, that he told Fisher, when he consented with Mr. Brush to put the rent up to $300, that he did not understand his own interest. Mr. Sheley was further interrogated by complainants' counsel upon that subject as follows:

" *Q.* Did you think that he understood his own interest when he entered into the lease?

" *A.* No; I did not think he did then.

" *Q.* And that controlled you in making this adjustment?

" *A.* I think he made a mistake when he entered into the lease.

" *Q.* And now, Mr. Sheley, that view of it influenced you in arriving at what he ought to pay?

" *A.* I do not know that it does."

It appears that this opinion was expressed by Mr. Sheley five years before the time of his acting as arbitrator, and at the time when the third term of five years commenced on the lease.

There is no showing upon this record that Mr. Sheley had such an opinion, at the time of his acting as arbitrator, that in any manner influenced his judgment; and it is expected of

[1] Citing *Conrad v. Ins. Co.*, 4 Allen, 20; *Kemp v. Rose*, 1 Giffard, 258.

arbitrators that they will frame their decision of matters submitted to them on broad views of justice, which may sometimes deviate from the strict rules of law; and there is nothing in the whole record indicating that Mr. Sheley or Mr. Leavitt did not act in the utmost good faith in the discharge of the duty assumed by them as such arbitrators.

"It is a well-settled rule in equity," says Senator Allen in *Van Cortlandt v. Underhill,* 17 Johns. 420, "that an award of arbitrators of the parties' own choosing, unless outrageously excessive on the face of it, and such as would induce every honest man at first blush to cry out against it, cannot be set aside, unless there be corruption, partiality, misconduct, or the use of an excess of power in the arbitrators, or fraud upon the opposite party."

We have carefully read this record, and are unable to find any testimony showing, or tending to show, that these arbitrators were guilty of corruption, partiality, misconduct, or any other act which would warrant a court in setting aside their award.

The office of arbitrator is one voluntarily assumed, and is many times a thankless task, and parties often feel aggrieved at their findings. Charges of corruption, fraud, partiality, and misconduct are easily made. The burden of proving these charges, however, rests upon the party making them. Every presumption will be made in favor of fairness; and courts of equity, even, will not set aside an award for reasons based upon such charges, unless the proof is made clear and strong. We find no proof in this case even tending to establish these charges.

The decree of the court below must be reversed and set aside, and a decree entered in this Court dismissing complainants' bill, with costs of both courts.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.