### JOHNSON et ux. v. KORN.

### MOLLISON et al. v. JOHNSON et 'ux.
### KORN v. SAME.

Nos. 3671, 3680, 3755.

Court of Civil Appeals of Texas. El Paso.

May 12, 1938.

Rehearing Denied June 2, 1938.

Dan P. Johnston, of Fort Worth, and Wm. H. Flippen, of Dallas, for Korn and Mollison.

W. C. Jackson and R. D. Blaydes, both of Fort Stockton, for Johnson and another.

NEALON, Chief Justice.

S. C. Johnson and Oskar Korn entered into a contract dated February 27, 1929, calling for the construction by Johnson of a building in Fort Stockton to be rented, used and occupied by Korn as a motion picture theater. The contract is lengthy and will be set out and summarized only to such extent as may be necessary to an understanding of the issues. The lease was to continue for a period of 15 years. For the first 5 years rentals were to be based upon percentage valuation of the cost of the buildings and improvements and to be paid in monthly installments in advance, and lessee was to pay state and county taxes and insurance upon the property involved. It was stipulated that at the close of each 5 year

period there should be a reasonable revision of the rental terms based upon the general business activity and rental values of similar property at Fort Stockton, and that in the event of disagreement, there should be arbitration of the controversy, each party being privileged to select a representative and the two being authorized to select a third arbitrator in the event of disagreement between them. The building was completed by S. C. Johnson and occupied by Korn until sometime in 1934, at which time Korn was delinquent in his rents upon this and the Alpine property hereinafter referred to in the amount of $8,366.87. The Fort Stockton property was conveyed by S. C. Johnson to his wife, Mrs. Lurline Johnson, on or about February 1, 1931, and thereafter became the property of Walter Donald Johnson, of which fact plaintiff was notified on or about February 1, 1937.

October 15, 1929, Johnson, as lessor, and Korn and E. Mollison, as lessees, entered into a contract which recited that Johnson had .started building and had agreed to erect and complete on a specified location in the City of Alpine a theater building according to the same plans and specifications (except for a few agreed minor changes) as those of the Grand Theater building then operating at Fort Stockton. Johnson completed the Alpine building and in pursuance of the contract said lessees moved into it and began the operation of their business. The language of the contract respecting the rental terms of the Alpine property, in so far as it affects the issues involved, was substantially the same as that of the contract relating to the Fort Stockton property. Especially was this true as to the features involving insurance, revision of rental charges, and arbitration. The clauses relating to payment of taxes in the two instruments were as follows:

Fort Stockton contract:

"The party of the second part further agrees, that in consideration of this rental and lease agreement, that he will pay all such City-County-and State valuation taxes as may be assessed against said buildings and said lots, and that such taxes shall be paid on or before maturity date."

Alpine contract:

"The lessee further agrees that he will pay such City and County and State valuation taxes as may be assessed against said building and lot and such taxes shall be paid by the lessee on or before maturity date."

The insurance clause in the Fort Stockton lease read as follows:

"Further—the party of the second part agrees to carry an insurance policy in favor of the party of the first part to an amount equal to the actual loss adjustment in event of destruction by fire (meaning an amount that would be actually paid by an insurance company in event of loss by fire) to the holder of the policy, and it is understood that such policy shall be carried with a reputable company preferably specializing in Theatre Insurance.

"It is further agreed—that the party of the second part will also carry a Tornado insurance of not less than $5000.00 payable to the credit of party of the first part, and to keep such policy in full force and effect during the life of this agreement.

"Further—The party of the second part agrees to carry a Plate Glass Insurance, to the credit of the party of the first part, or in event of failure to do so shall be held liable at his own risk and expense to replace such loss to such glass, in event he should fail to carry such insurance to plate glass."

In 1934, in a Federal bankruptcy proceeding in Dallas, with the approval of the Court, the contracts were altered in some respects and a compromise of the accrued indebtedness was. agreed upon. This compromise agreement was thereafter approved by the District Court of the 83rd Judicial District in and for Pecos County in a suit growing out of lessees' indebtedness under the contracts. By the adjustment made in 1934, it was agreed that the indebtedness for antecedent rent should be satisfied by the payment of $5,000, $2,000 of which should be paid in cash, and the balance as hereinafter stated; that 1934 taxes on both properties should be paid by Korn and his associate, Mollison, by January 31, 1935, but that one-twelfth of said taxes should be reserved out of the installment payable to Johnson in the month of January, 1935; that the delinquent rentals amounting to $3,000 and the rental up to January 3, 1937, which was fixed as a period at which there might be a revision of the contract as to rents, should be paid in 26 monthly installments of $573.79 each, $450 of each payment being for the cur-

rent month's rent; that on default in the payment of any of said monthly installments the full amount of the original indebtedness should become immediately due and payable; that a lien should exist upon the furniture, fixtures and equipment to secure the payment of the monthly installments provided for; that the arbitration clause should be changed to provide that in the event the two arbitrators appointed by the parties failed to agree within 10 days, a third member of the arbitration board should be appointed by the then presiding judge of the 83rd Judicial District, and in the event either of the parties failed within 5 days of an arbitration date to name his arbitrator, the Court should name someone to act; that "taxes on and after 1934 as herein provided to be paid by lessor shall be limited and restricted to the real estate and its improvements, and in no wise to be upon the furniture, fixtures and/or equipment of the lease, which tax shall and is to be a charge against the lessee only and paid by him or it, and in such manner as to never become delinquent; * * * that on each of the theatres sufficient insurance shall be carried on furniture, fixtures and equipment as to cover the outstanding indebtedness due hereunder, and to be written in the name of the lessor and the lessee as their respective interests may appear." Neither of the original contracts required insurance upon the furniture, fixtures and equipment. The altered contract contained no other mention of insurance. It was also provided that except as stipulated and modified, the lease agreements as to the Fort Stockton and Alpine properties should remain and control in every respect. The original contract contemplated that the equitable revision of rental terms provided for therein might effect either an increase or decrease, as conditions warranted.

January 12, 1937, the time fixed for the revision of the rental provisions, Korn and S. C. Johnson met, but failed to agree as to the amount of rents to be paid for the succeeding 3 years. Korn appointed as his arbitrator T. W. Talliaferro and the defendants appointed Jack Hubbs. Upon the failure of these two arbitrators to agree, Judge C. R. Sutton, of the 83rd Judicial District, appointed T. R. Logan, who served but a short time and resigned. Thereupon Judge Sutton appointed John F. Allison to act as the third ar-

bitrator. The arbitrators met a number of times and a majority of them, to-wit, Allison and Hubbs, made a written report on January 30, 1937. Taliaferro did not sign the report. The report or award (omitting formal portions) is in the following language:

"We, John F. Allison of Uvalde, Texas, and T. W. Talliaferro, of Fort Worth, Texas, and Jack Hubbs of Fort Stockton, Texas, met as a board of arbitrators on Tuesday, 26th day of January, 1937, at Fort Stockton, Texas, for the purposes of determining the amount of rents that Oskar Korn and Ernest Mollison (or their assignees, if they have such) should pay to Mrs. Lurline Johnson and Walter Donald Johnson, successors of S. C. Johnson in title to the property known in Fort Stockton as the theatre building, now being operated by O. K. Theatres and also the theatre building in Alpine, Texas, now being operated by the same theatre company. After fully investigating the business activities of each of the towns of Fort Stockton and Alpine and the rent value of similar properties at the present time and taking into consideration a bona fide offer Mr. S. C. Johnson had on the two buildings and other things, and after having several meetings of the board finally on January 30, 1937, board met and Mr. Allison announced that rentals of $250.00 per month for each of said buildings was the fair and reasonable rental price, to which decision Jack Hubbs agreed, thereupon and after John F. Allison and Jack Hubbs agreed on a rental value of $250.00 for the theatre building at Fort Stockton, and $250.00 for the theatre building at Alpine per month, for a period of three years, beginning February 1, 1937, and ending January 31, 1940.

"We, therefore, award to the present owners of said buildings the sum of $250.00 rents per month on each of said buildings for a term of three years beginning February 1, 1937, as aforesaid. This does not include taxes and insurance of either or both of said buildings. The other arbitrator, T. W. Talliaferro did not agree to our findings and awards."

Korn was dissatisfied with the award and filed suit number 648 in the District Court of Pecos County, 112th Judicial District, seeking to enjoin defendants S. C. Johnson and wife, Lurline Johnson, and W. Donald Johnson and wife, Gene Johnson, from for-

feiting said lease or foreclosing the lien created by the lease contract and praying for the cancellation of the award as respects the Fort Stockton property, and that the court ascertain and determine the amount of rentals due under the contract from February 1, 1937, through the succeeding 3 year period. As grounds for his relief he alleged that the findings of the board did not represent a fair, just and reasonable reappraisement of the rental value based upon the general business activities and rental values of similar properties in the City of Fort Stockton; that the appraisers proceeded under a mistaken notion of their duties; that from the face of the award it appeared that they considered an "alleged bona fide offer" which defendants had claimed to have received, and which offer plaintiff alleged was contrary to the terms of the contract and ineligible as a basis of award in other named respects; that the board had refused to consider rental valuations of similar property in the City of Fort Stockton and had taken into consideration other matters improperly, and fixed an arbitrary amount of rentals without regard to plaintiff's rights. The various specifications are lengthy, and will be referred to only generally. The plaintiff charged also that arbitrator Hubbs was partial to S. C. Johnson, who acted in behalf of lessors; that he was the private confidant and business associate of Johnson; that he was familiar with the problems that confronted Johnson, and in accepting the appointment considered it his duty to use his influence to secure the highest possible award for Johnson, without regard for plaintiff's rights; that Johnson dominated and controlled the board and that the award did not represent the independent judgment of the appraisers.

Defendant W. D. Johnson filed general and special demurrers, general denial, special defenses and a cross-action to recover $1,068.26 that he alleged he had paid for taxes and insurance which he alleged it was the duty of cross defendant to pay, and for $1,000 for alleged damages to the walls of the building. The court sustained a plea in abatement as to the claim for damages arising out of alleged injury to the building. Defendant W. D. Johnson dismissed without prejudice so much of his cross-action as sought recovery of insurance premiums for the year 1937. The Court instructed a verdict in favor of defendant upon plaintiff's action and in favor of plaintiff upon defendant's cross-action,

and entered judgment in conformity to the verdict rendered in obedience to the instructions.

All parties excepted and gave notice of appeal. Plaintiff prosecutes his appeal by writ of error—the cause number on appeal being 3755.

Mollison and Korn brought suit No. 649 in the District Court of Pecos County, 112th Judicial District, complaining of S. C. Johnson and his wife, Lurline Johnson (the latter having become the owner of the Alpine property on or about February 1, 1931), in which they made the same allegations as to the alleged invalidity of the award as were made in cause No. 648, and sought the same character of relief as was therein sought, with only such differences as to allegations and prayer as were necessary to make them applicable to the Alpine property and its owners, as well as to Mr. Mollison.

Defendants answered by general and special exceptions, general denials, special affirmative answers, and filed a cross-action, which was withdrawn before verdict. The Court instructed a verdict in favor of defendants and rendered judgment in conformity with the verdict so returned. Plaintiffs excepted to the judgment, and prosecute writ of error therefrom in cause No. 3680 upon the docket of this Court.

Upon motion appeal causes 3680 and 3755 were consolidated for the purposes of the hearing on appeal.

## Opinion.

Plaintiffs in error describe the nature of each of the suits involved in these appeals in this language:

"This is a suit to cancel an Arbitration Award fixing the rentals due under an arbitration clause in a lease contract covering a Theatre Building * * * on the grounds of fraud, undue influence and mistake on the part of the Arbitrators, due to their misconception of their duties under such arbitration agreement as contained in the lease contract, and upon the grounds of partiality and prejudice on the part of certain members of the Arbitration Board, in favor of the Defendants in Error, and against the Plaintiff in Error."

█ The transaction involved is a common law arbitration—a proceeding favored in Texas law. Ferguson v. Ferguson, Tex.Civ.App., 110 S.W.2d 1016, and

authorities cited. In such a proceeding the award of an arbitration board when made within the terms of the submission agreement has attached to it many of the characteristics of a judgment of court, and especially so as to finality, freedom from collateral attack, and invulnerability against direct attack, except for "fraud, partiality, misconduct or gross mistake committed upon the part of the arbitrators, to the manifest injury of the party complaining." Payne v. Metz, 14 Tex. 56. As the Court said in the case just cited:

"The Court should interpose in this class of cases with great caution; and never, except in a case of urgent necessity, to prevent the consummation of a fraud, or some great and manifest wrong and injustice. It is not every error or mistake of law or fact, which will warrant the setting aside of an award. If it were, there would be but few awards made which would stand the test of judicial investigation; for they are most frequently made by men not learned in the law, nor skilled in judicial proceedings. And if they could be questioned on slight grounds or for trivial errors, there would be few which would not become the subjects of judicial investigation; for the cases will be rare indeed, in which the award, however equitable and just, will prove perfectly satisfactory to all parties."

Awards are to be liberally and favorably regarded and mere technical objections to them are not to be countenanced. Forshey v. R. R. Co., 16 Tex. 516. Nothing will be presumed against them. They will be supported by every presumption in their favor not contradicted by proof. Chevallier v. Buford, 1 Tex. 503; Robbs v. Woolfolk, Tex.Civ.App., 224 S.W. 232.

Bearing in mind the foregoing principles we proceed to investigate the record to determine if the pleadings and evidence were sufficient to require the court to submit any issues to the jury. Since one essential of any valid award or judgment is that the triers of fact shall not be disqualified to sit in judgment, we proceed first to examine the challenge as to the eligibility of arbitrator Hubbs. It was charged in the pleadings that Hubbs was disqualified by reason of his association with S. C. Johnson, husband of the owner of the Alpine property and father of the owner of the Fort Stockton property, and agent of both owners in the arbitration proceeding, the specific charges being that he was the private confidant and business associate of the said S. C. Johnson; that he considered himself the agent of S. C. Johnson and in duty bound to secure the highest possible award; that prior to his service as arbitrator he had discussed a purported offer of purchase from G. H. Hall; that he refused to consider similar property in the two towns. From the evidence it appears that Hubbs and S. C. Johnson had been friends for about 15 years, that they had once been partners in the "garage business," that they were fellow-stockholders in three or four corporations, and that Hubbs had testified in behalf of Johnson or some members of his family in two or three law suits. They had not been business associates or interested in any of the same enterprises since 1931. They were not related, and Hubbs was not interested directly or indirectly in the outcome of the controversy. Johnson testified that he asked Korn if he objected to Hubbs as an arbitrator and received a negative answer. Neither Korn nor Mollison alleged that they were ignorant of Hubbs's friendship for Johnson and his former association with him before Hubbs was designated as an arbitrator. None of the relationships recited disqualified Hubbs as an arbitrator. In Bell v. Campbell, Tex.Civ.App., 143 S. W. 953, writ refused, the court held that an arbitrator was not disqualified because his nephew was married to a sister of one of the principals; and in 5 Corpus Juris, p. 65, it is said that for a business relationship to disqualify it must be such as to furnish evidence of partiality, or must at least give reasonable ground of suspicion. As analogous to charges herein made, see, also, Morville v. Amer. Tract. Soc., 123 Mass. 129, 25 Am.Rep. 40. In Corpus Juris (Volume 5, p. 65) cases are cited holding no disqualification to exist by reason of the following relationships: Employee whose duties were not related to the subject matter of the arbitration; former employee of a party; one who had before served as an arbitrator at the instance of the party in whose favor award was made; one who was a tenant of a party; one who had been a witness for one of the parties; one who had been a witness for one of the parties in an action concerning the dispute being arbitrated; one who was a creditor of one of the parties; one who was a debtor of one of the parties; one who had formerly been counsel for one of the parties. The instances are noted, not in approval of each holding, but merely to indicate the trend of judicial decision which

looks with disfavor upon attacks of this character unless made upon the weightiest grounds.

Hubbs' situation is not comparable with that of Appraiser Phelps in Delaware Underwriters & Westchester Fire Ins. Co. v. Brock, 109 Tex. 425, 211 S.W. 779. In the opinion of the Court of Civil Appeals, Id., 206 S.W. 377, 378, it was said that the disqualified appraiser appeared to be regularly in the employ of the insurance company. Nor is the case of Pennsylvania Fire Ins. Co. v. W. T. Waggoner Estate, Tex.Com.App., 39 S.W.2d 593, Id., Tex.Civ. App., 41 S.W.2d 340, applicable. A statement of the manner of arriving at the award and the evidence as to the deliberate refusal of the Company appointed appraiser and the umpire to consider the condition of the destroyed property, as shown in the opinion of the Court of Civil Appeals, describes a situation widely different from the one here presented. The umpire in Schwartzman v. London, etc., Co., 318 Mo. 1089, 2 S.W.2d 593, had, prior to the completion of his duties, become interested in an agency representing the insurance company involved, and was, therefore, disqualified. He did not disclose this connection to the complaining litigant. The Alabama case of Hall v. Western Assur. Co., 133 Ala. 637, 32 So. 257, cited and quoted from by appellants, and cited by Mr. Justice Greenwood in Delaware Underwriters Ins. Co. v. Brock, supra, presents a vastly different state of facts from that shown to exist in the instant case. In that case the fire loss occurred at Huntsville, Ala. Appraiser La Coste, the Insurance Company's nominee, resided at Birmingham. Further facts are thus stated by the Alabama Court (page 258):

"On the next day after his selection he appeared in Huntsville; was met at the hotel by Adams, the representative of the defendant who made the agreement for submission for it and named La Coste as an appraiser. He was then told by Adams that the first thing to be done is the appointment of an umpire, and that he must appoint Myers, who had frequently acted for insurance companies and was a good man for them. He secured the selection of Myers as umpire. After doing so he instituted a search for Myers and, failing to find him at his place of business, he went to his home, at night, where he spent more than an hour. He said to White, the other appraiser, 'We don't want to be in too big a hurry about this thing, as I get ten dollars a day and my expenses out of these insurance companies.' He made an effort to have White displaced and have some one from St. Louis or Chicago to take his place on the board. His conduct was such as to cause White to decline further to act with him. In a letter written by these plaintiffs to Adams, the fact is stated that La Coste had been repeatedly employed by the defendant and paid by it, which was never denied. Without attempting to draw any inferences from these facts, which are undisputed, it is clear to us that the disinterestedness vel non of La Coste was a question for the jury."

As to the controlling principle, the Court said:

"In other words, if it be true that the appraiser named by defendant, although his selection was agreed to by the plaintiffs, was not disinterested, and this was known to defendant but unknown to the plaintiffs at the time of entering into the agreement of submission, they are not bound by the agreement to arbitrate, and are at liberty to prosecute this suit."

When a party has knowledge of a disqualifying relationship and has an opportunity to object to the arbitrator and does not do so, he may not be heard to complain after award is made. In 1934 when a similar dispute arose between the parties Hubbs was, upon the objection of Korn, withdrawn as an arbitrator. In 1937 Korn made no objection. It was not alleged that either Korn or Mollison was ignorant of the former association between Hubbs and Johnson or of any other alleged disqualification. No objection was made to the participation of Hubbs either before the proceedings were begun or during their progress. If Hubbs's conduct indicated that he was partial, it is difficult to believe that the parties plaintiff could not have ascertained it. There seems to have been no secrecy about the opinions or actions of the arbitrator. From their interpretation of decisions from sixteen jurisdictions, the editors of Corpus Juris (Volume 5, p. 67) deduce this rule:

"Notwithstanding the existence of facts which may influence the judgment of an arbitrator, if a party with knowledge of such facts, submits his case to the decision of such person, the objection is waived, and the same rule obtains where a party has agreed to submit to arbitration without knowledge of such facts, and afterwards,

during the progress of the hearing, obtains knowledge thereof and proceeds without objection, to the making of an award. The principles above stated apply whatever may be the character of the objection. Thus they have been applied when the objection was that the person selected as arbitrator had formed an opinion upon the merits of the controversy; that he had had business relations with a party to the submission; that he was related to the party in favor of whom the award was made; that he had an interest in the subject matter of the submission; or that he was a party to the submission."

In Delaware Underwriters Ins. Co. v. Brock, supra, the insured objected promptly to the disqualified appraiser, and when the company refused to withdraw him and nominate some one who was impartial, declined to go into an appraisement. The Alabama Court said in Hall v. Western Assur. Co., supra: "It is doubtless true that the burden of proof, under the issue made by these pleas, was upon the plaintiffs." This last passage is especially applicable to plaintiffs' failure in the instant case to allege ignorance before and during the proceeding of Hubbs's alleged partiality. In Cooley's Briefs on Insurance, page 6190 (2d Ed.) it is said:

"The defeated party cannot object to an award if, knowing of the existence of conditions which may influence the judgment of an arbitrator or referee or having notice of the partiality of one or more of the referees, sufficient to put him on inquiry, he is silent," citing Western Assur. Co. v. Hall Bros. Co., 143 Ala. 168, 38 So. 853; Doherty v. Phoenix Ins. Co., 224 Mass. 310, 112 N.E. 940.

All assignments of error challenging the eligibility of Arbitrator Hubbs are overruled.

Among the objections to the award which plaintiffs in error deem fatal are that the arbitrators considered, among other things: an offer from G. H. Hall; that they gave weight to the original cost of construction; that in making the award the arbitrators were controlled by a mistaken idea of their duties, and disregarded the provision of the lease contract which provided that the increases or decreases should be "based upon the general business activities and rental valuations of similar properties."

 It was not stipulated in the contract that the arbitrators should follow legal rules of procedure. Therefore, the courts have no jurisdiction to set aside the award upon technical grounds, or upon the ground that evidence was received that might not be admissible in a court of justice if proper objection were made. 2 R.C.L. p. 381; Edrington v. League, 1 Tex. 64. Nor are we concerned with the soundness of the arbitrators' reasoning. We may not set aside the award merely because we think the arbitrators erred in judgment, provided only it were an honest judgment. Carlston v. St. Paul, etc., Ins. Co., 37 Mont. 118, 94 P. 756, 127 Am.St.Rep. 715, citing Chancellor Kent in Underhill v. Van Cortlandt, 2 Johns Ch., N.Y., 339, Brush v. Fisher, 70 Mich. 469, 38 N.W. 446, 14 Am. St.Rep. 510. If, however, upon its face it shows that there was a mistake as to their authority, and that mistake controlled their findings to the manifest injury of plaintiffs in error, the judgment must be set aside, and if the evidence raises a substantial question, the judgment must be reversed that a jury may determine the issue of fact.

 Bearing in mind what has just been said, we think and hold that the objections to the consideration of Mr. Hall's offer and the exceptions to the actions of the trial court in excluding evidence as to his financial standing are without merit. It is neither alleged nor shown that through any fraud or artifice of the defendants in error or of any of the arbitrators plaintiffs in error were prevented from placing such evidence before the board of arbitrators. No reason is given why this evidence might not have been then produced. That was the time to produce it. Rector v. Hunter, 15 Tex. 380. If, however, upon such evidence as was before them, the arbitrators mistakenly decided that the Hall offer was in good faith, and that Mr. Hall was able to comply with the obligations he offered to undertake, such an error is one beyond our power to correct. The parties selected the court to try these issues. The possibility of an erroneous award was a risk assumed. All assignments of error attacking the award upon this and similar grounds and challenging the action of the court in excluding testimony of the character mentioned are overruled.

 As to the charge that the award is the result of mistake caused by a misconception of the terms of the submission, we think the record does not bear out the contention of plaintiffs in error. The fact that the arbitrators took into consideration

the original construction cost does not, in view of the manner in which it was considered, effect a departure from the rule prescribed by the contract. Mr. Hubbs testified that in order to ascertain the rental valuations of similar property he made a trip to Alpine and investigated the rents being paid for a number of business locations and considered the returns the landlords received upon their investment; that he attempted to get buildings that had been built for a specific purpose and occupied for that purpose, and especially considered those that had been occupied continuously and disregarded those which were changing tenants every few months; he considered buildings occupied by drug stores, grocery stores, tailor shops, chain stores, and other enterprises. There was but one other theater building in Alpine. He did not think it qualified as a standard because it was old and had not been continuously occupied and used. He considered it to that extent. Now whether Mr. Hubbs was correct in fixing his standard of comparison or not, he was certainly acting within the terms of his appointment and he cannot be said to have failed to consider the old theater or the other vacant buildings, though it was his judgment that they did not furnish valuable guides in measuring the rental value of the theater. It was his judgment that was sought, and the only reasoning that could be applied by him was such as his own mind suggested, or such as it approved when suggested by his fellow arbitrators and the interested parties. As to Fort Stockton, Mr. Hubbs said that he took into consideration properties and properties only that were built at about the time that the "others" were built and properties that were built for specific purposes. Again, as in Alpine, he used the test that they be used and occupied for the purpose for which built. He considered the returns that these properties made upon the investment. He named a number of buildings and showed familiarity with their market rental value. He interpreted the contract to call for a fair, just and reasonable percentage of revenue on the investment to be raised or lowered according to prevailing conditions; and, according to this theory he acted while participating in the deliberations of the arbitration board. The brief of plaintiffs in error does not call our attention to any evidence indicating that either of the other two appraisers was mistaken as to his duties under the contract. We think upon this evidence there was no issue of mistake to submit to the jury, and accordingly overrule all assignments and propositions urging error in the court's action on this issue.

As to the charge that the award was the result of undue influence exercised by S. C. Johnson: we find no evidence that in making the award the arbitrators were dominated by Mr. Johnson, and that the award represented his judgment and not theirs. Indeed, it is considerably less than the amount he sought to have named; and the manner in which it was arrived at indicates that Mr. Allison was most influential in determining it and in doing so was dominated by no one.

 Was the amount awarded so grossly excessive as to furnish evidence of partiality or bias in favor of the landlord calling for submission of the issue to the jury? Mr. Allison testified that after his investigation of the situation he decided that a fair, just and reasonable revision would call for rental of $250 per month on each theater. He said that one arbitrator suggested as a price for the two theaters the sum of $425 for the first year, $450 for the second year and $475 for the third year, with the lessee paying interest and taxes; the other suggested $450 for the first year, $475 for the second year, and $500 for the third year, with the lessor paying interest and taxes. He said he took into consideration the fact that building activities were good from the information that he had obtained from various business men; that he had made an investigation as to rental values compared with those of 1929, and he took into consideration the offer Mr. Johnson had received for the building. As to the final meeting he testified:

"As best I remember, I told them what I had arrived at and the conclusion that I was going to reach, and that I was going to express myself, and Mr. Talliaferro said, 'Wait a minute,' and I said, 'No, I have been waiting here several days and I am tired, and I have my mind made up, and I am going to fix these rental values at $250.00 per month each, on these two places,' and Mr. Talliaferro said, 'I will not agree to that,' and Mr. Hubbs said, 'Will you give me a few minutes?' and I said, 'So far as I am concerned you can have all the time you want,' and Mr. Talliaferro said, 'It is all right with me.' So he went downstairs, and he came back after awhile and said, 'I am going to vote with you.' And that is about the total sum of it."

Among other facts shown by the record are that when the adjustment was made in the Bankruptcy Court in 1934 and afterwards confirmed by the District Court, the rental price on each theater was fixed by agreement at $225 per month for each theater. Mr. Allison testified that conditions were better in 1937 than in 1934. Mr. Logan, the first arbitrator designated by Judge Sutton, had suggested an effort to get together on a basis of $375 per month for the first and second years and $400 for the third year, with the lessor paying taxes and insurance. The original contracts called for monthly rental payments during the first five years of $286.23 upon the Alpine building and $287.41 upon the Fort Stockton building plus taxes and insurance in each case. The award calls for a total payment of $250 monthly for each building. There is no such wide variation between the figures suggested by the various arbitrators as to indicate a fraudulent appraisal of the rental value of the properties. Goddard v. King, 40 Minn. 164, 41 N.W. 659. Especially does this appear true, when the fact is considered that the award is an advance of only $25 per month over the agreed 1934 rental value.

Johnson et ux. v. Korn Appeal—No. 3671.

W. D. Johnson and wife appealed from so much of the judgment in case No. 648 as denied them a recovery upon their cross-action. They insist that they are entitled to recover taxes paid during 1935 and 1936 amounting to $461.20, and insurance upon the building for the same years amounting to $299. As heretofore stated, they dismissed their prayer to recover for insurance for the year 1937.

We hold that by the terms of the lease contract as altered by the agreed order entered in the Bankruptcy Court and subsequently confirmed by the judgment of the District Court, the lessor was made liable for all taxes upon the real estate accruing subsequent to the year 1934. Unless such effect is given to the clause with respect to taxes on the real estate and its immediate improvements which provided for their payment by lessor, the provision must be ignored. It is, however, as much a part of the contract as any other part of the document, and it is our duty to respect it, even as the District Court has done in this case.

In order to set aside or modify the judgment of the District Court in any particular, it must be made to appear that the Court erred; that its judgment was not in accord with the evidence. Rule 31 of the rules governing Courts of Civil Appeals requires that the briefs contain a clear and accurate statement of the record bearing upon the respective propositions with reference to the pages of the record. There is no statement of the evidence under the various propositions urged by appellants Walter D. Johnson and wife showing that payments of either taxes or insurance were made by them or on their request or in their behalf. S. C. Johnson testified that he paid the taxes and the insurance premiums. The tax receipts in evidence recite that the property was assessed to S. C. Johnson and wife. The statement made in the brief by appellant does not show when, if ever, Walter D. Johnson acquired title to the property or the extent of his title. No deed or other conveyance to Walter D. Johnson or his wife appears in the record. There is a rather hazy statement made by S. C. Johnson when asked how his son "got it," that it was based upon a certified judgment. Apparently, the testimony referred to a Federal Court judgment. He thought that the date of the judgment was in December, 1935. No copy of the judgment was introduced in the record and there is no evidence of its date or when it became effective. It was not shown whether W. D. Johnson acquired title adversely to Lurline Johnson, or by grant from her. Regardless then of whether or not the expense of insurance was to be considered a part of the rent to be paid for the use of the property, the record on appeal does not show that any covenant to pay the insurance premiums inured to the benefit of W. D. Johnson, or that Judge erred in instructing a verdict against defendants W. D. Johnson and wife upon their cross-action.

Our views herein expressed, if correct, demonstrate that the court committed no reversible error in sustaining various exceptions to the pleadings of plaintiffs, and the assignments challenging these rulings of the court are overruled.

All assignments whether discussed or not have been duly considered and are overruled.

Judgment is affirmed in each case.