Najib HADDAD et ux., Appellants,

v.

C. R. BAGWELL et al., Appellees.

No. 5291.

Court of Civil Appeals of Texas.

El Paso.

Oct. 7, 1958.

Rehearing Denied Nov. 19, 1958.

Fryer, Milstead & Luscombe, El Paso, for appellants.

Potash, Cameron, Potash & Bernat, Burges, Scott, Rasberry & Hulse, El Paso, for appellees.

WILLIAMS, Justice.

On December 17, 1949, plaintiffs Najib Haddad and wife, Julia Haddad, hereinafter referred to as "plaintiff" or "appellant," entered into a contract in writing with defendant C. R. Bagwell, hereinafter referred to as "appellee", as the Contractor, to construct a residence at 1600 North Mesa Avenue, El Paso, Texas. Haddad had theretofore verbally employed Ralph V. Davis and John P. Foster, architects, doing business as Davis & Foster, to draw the plans and specifications for said house, and to see that the house was constructed according to said plans. In February 1951 plaintiffs moved into their house, and faults in construction began to appear. Negotiations were had back and forth between the parties trying to adjust these differences, but, after all efforts in this regard failed, in April 1953 an agreement was signed by the plaintiffs and Bagwell to arbitrate their differences. Plaintiffs selected O. H. Thorman as arbitrator; defendant Bagwell selected Silvio Prati; and these two, after much dickering and argument, selected Mr. Rowland Gil-

christ. Mr. Gilchrist was not entirely satisfactory to defendant Bagwell because he lacked certain professional qualifications, but he was finally accepted. Final meeting of the arbiters was held on December 1, 1953, and all parties appeared in person or by their respective attorneys. As the result of this meeting, the following award (in brief) was, on December 1, 1953, signed by Thorman and Gilchrist; Prati, arbitrator for defendant Bagwell, declined to sign:

1. The contractor, C. R. Bagwell, did not construct the house in accordance with the plans and specifications.

2. Such defects are the responsibility of Bagwell.

3. The defects were occasioned by defective material and workmanship and failure of Bagwell to follow plans and specifications.

4. The liability and responsibility of Bagwell to Haddad for these defects is $12,652.80.

5. Bagwell is entitled to a credit of $1,069.57.

6. and 7.—(Not material here.)

On December 3, 1953, two days after the award was made, attorneys for Bagwell wrote a letter to plaintiffs' attorneys refusing to abide by said award for several reasons, one of which was that the arbitrators did not follow the terms of the arbitration agreement, etc.

On December 29, 1953, plaintiffs filed suit against Bagwell in two parts: First, for enforcement of the arbitration award; and second, for his failure to comply strictly with the terms of the written agreement. The second count also contained an action against the architects, Davis & Foster, for failure to perform their contract to properly supervise the construction of the residence, etc. Among other things, the architects filed a motion for a summary judgment alleging the cause of action to be

upon an oral contract, rather than a written contract, and that therefore same was barred by the two-year statute of limitations, Vernon's Ann.Civ.St. art. 5526. Plaintiff insisted, among other things, that the agreement between the architects and the plaintiffs was based and founded upon the contract in writing—to-wit, the one above mentioned between the plaintiff and the contractor—and that his claim, therefore, was based upon a contract in writing and controlled by the four-year statute of limitations. The court rendered judgment for the architects on their motion for summary judgment, ordering that same be carried forward and incorporated in the final judgment for purposes of appeal. Thereafter, defendant Bagwell filed an amended pleading in which he alleged, among other things, that the arbitrators were guilty of gross mistake and partiality.

Trial was before a jury on special issues and both parties filed motions for judgment, and the court entered judgment for the defendant, Bagwell, in the sum of $798.47 plus costs, same being based on specific findings of the jury, and the allowance of $1,000 owing by plaintiff to Bagwell. Some 27 issues were submitted to the jury. Issue No. 18 is the main bone of contention herein. It, and its answer, are as follows:

"Do you find and believe from a preponderance of the evidence that Arbitrators Thorman and Gilchrist, in assessing damages in their report, took into consideration all damages that they thought occurred to the Haddad residence, regardless of whether such damages were the result of the contractor's failure to comply with the plans and specifications of the residence? Answer yes or no.

"We answer Yes."

Plaintiff objected to the submission of this issue because an award of the board of arbiters may only be set aside because of "prejudice, fraud, or gross mistake, and therefore the question should not have been submitted." They also made a motion at the proper time that said issue and its answer be disregarded by the court for the same reasons.

Appellant sets up four points of error, briefly as follows:

### Point I.

The Court should not have submitted Special Issue Number Eighteen for the jury's consideration for the reason that this suit was not an appeal from the arbitration award and the question as submitted was a direct and collateral attack upon the award of the arbitrators, not involving fraud, partiality, misconduct or such gross mistake as would imply bad faith or a failure on the part of the arbitrators to exercise an honest judgment.

### Point II.

The court should have disregarded the jury's answer to special issue No. 18 for the reasons stated above.

### Point III.

The court erred in rendering judgment on the motion for summary judgment filed by the architects, Davis & Foster, because the evidence and the pleadings were to the effect that the cause of action was "based upon and founded upon a contract in writing, including the general contract, plans and specifications," prepared by the architects, and included in the contract between plaintiff and Bagwell.

### Point IV.

The court erred in rendering the summary judgment above referred to because the architects were estopped to plead the two-year statute of limitations.

Points I and II are so interrelated that they will be discussed together. As can readily be seen, the plaintiff insists that the award of the board of arbiters was full and complete on its face, and

did not show "fraud, partiality, misconduct or such gross mistake as would imply bad faith or a failure on the part of the arbiters to exercise an honest judgment." Defendant Bagwell insists that the court did not err in disregarding the arbitration award and rendering judgment on the findings of the jury, including Special Issue numbered eighteen, because, he insists, the arbitrators went outside of the scope of their authority and rendered an award that they were not entitled to render because, as shown by Issue No. 18, they found damage against defendant Bagwell, whether he was responsible for it or whether it was the responsibility of someone else. For this argument he relies largely on an opinion by Chief Justice Nealon, of this court, found in Johnson v. Korn, Tex.Civ.App., 117 S.W. 2d 514, 521 (writ refused), wherein it said:

"If, however, upon its face it shows that there was a mistake as to their authority, and that mistake controlled their findings to the manifest injury of plaintiff in error, the judgment must be set aside, and if the evidence raises a substantial question, the judgment must be reversed that a jury may determine the issue of fact."

The rule of law applicable to setting aside arbitration awards is aptly stated in Couey v. Arrow Coach Lines, Tex.Civ.App., 288 S.W.2d 192, 196 (no history), as follows:

"Rules of law applicable to contractual arbitrations are plain and well settled. They require that the arbitration be conducted and determined in accordance with the contract. They forbid an attack on the award made except for fraud, misconduct or such gross mistake as would imply bad faith or a failure to exercise an honest judgment. Galveston, H. & S. A. Ry. Co. v. Henry, 65 Tex. 685. An award in excess of the authority conferred by the agreement is void. Fortune v. Killebrew, 86 Tex. 172, 23 S.W. 976; Evans v. De Spain, Tex.Civ.App., Austin, 37 S.W.2d 231.

"Our duty, under this record, as we conceive it, is to construe the contract between Arrow and the Association and determine whether the award made is within or beyond the scope of the terms of such contract and the reference made by the parties thereunder. Callaway v. Albin, 114 Tex. 5, 261 S. W. 372."

The rule is stated by the Supreme Court, in Shultz & Bro. v. Lempert, 55 Tex. 273, as follows:

"If no right of appeal is reserved and the agreement, proceedings and award, in substantial compliance with the statute, then the award will, on motion be made the judgment of the court, unless, indeed, to be impeached on equitable ground, such as fraud, or gross mistake."

See: 4 Tex.Jur., ¶ 32, p. 697; Smith & Lawson v. Taylor, Tex.Civ.App., 249 S.W. 519.

Among other things, the arbitrators were instructed:

"Your main function, therefore, is to determine if there are any defects in the house which are the responsibility of the Contractor under his contract with the Owners. The Contractor's responsibility under his contract should be outlined by you gentlemen as arbitrators, taking into consideration the plans and specifications and the terms of the contract, as well as the changes made and the supervision of the Architects."

The evidence relied on by appellee Bagwell to show that the arbitrators went without the scope of their authority in making the above award is set out in his brief, as follows:

"Mr. Gilchrist, one of the arbitrators, testified on page 290, SF I, as follows:

" 'Q. And regardless of what caused it, it took that much to repair it, you thought, didn't you, Rowland?

" 'A. That's right. Yes, I will say that.'

"Mr. Thorman on page 241 SF I, was not quite as frank:

" 'Q. And one of the amounts that the contract says—that is, whether Mr. Bagwell had done it according to the plans and specifications, so you didn't pay any attention to that, you just paid attention to what you found wrong with the house, didn't you?'

"(Objection made and overruled)

" 'Q. Is that correct? You just considered what it would take to repair the house, regardless of what caused the damage, didn't you?

" 'A. Well, no, I—as I made my notes there, I naturally checked the cause of the trouble, and put that in my report.'

"On page 279SF I, Mr. Gilchrist testified:

" 'If the slab and the building wall settled at one time, together, it might not make any difference, but, as a usual thing, when they settle in a building and the slab goes down, it shows on the wall a definite—mark as to whether have settled or not.' "

The arbitrators were authorized to assess the damage caused by Bagwell, and this they did. As is shown above, they found that he did not build the house according to the plans and specifications, and that all the damage they assessed was his.

The award is certainly full and complete on its face, and the evidence above does not, in any way, reflect "gross mistake" such as would imply bad faith or a failure to exercise an honest judgment. This court, in Johnson v. Korn, Tex.Civ.App., 117 S.W.2d 514, 521 (err.ref.) upheld the trial court's instructed verdict. Among the objections in that case was "that in making the award the arbitrators were controlled by a mistaken idea of their duties, and disregarded the provisions of the lease contract which provided that the increases or decreases should be 'based upon the general business activities and rental valuations of similar property.' " The court said:

"We may not set aside the award merely because we think the arbitrators erred in judgment, provided only it were an honest judgment."

We therefore hold that it was error to submit Issue 18 over appellant's objections, and when submitted it should have been disregarded. We therefore sustain appellant's Points I and II.

■ Under Point III, appellant states the proposition involved as follows:

"The essence of the architects' motion is to the effect that the contract between themselves and plaintiffs were not actually signed and since the residence was completed on February 21, 1951, and this suit was not filed until December 29, 1953, it was barred by the two year limitation.

"It is plaintiffs' contention that the contract between these parties was based upon and founded upon a contract in writing and therefore the four year statute applied."

Appellant, then, in his brief sets out excerpts from the contract between the builder and the plaintiffs in an attempt to show that the architects were parties to the contract, although they did not sign same. It is shown that the architectural firm of Davis & Foster is throughout referred to as "architect"; that the firm prepared drawings and specifications and the contract documents; that their name appeared on these documents as "the architect"; in several places in the contract, it was agreed by the parties to the contract

that the architect would do certain things—for instance, "and the architect shall furnish them in accordance with that schedule;" "the contractor and the architect, if either so requests, shall jointly prepare a schedule" etc. In another place: "The architect and his representatives shall at all times have access to the work" etc. It further states: "The contractor shall keep on his work during its progress a competent attendant, and any necessary assistance, all satisfactory to the architect"; "The architect shall have general supervision and direction of the work"; "As the architect is, in the first instance, the interpreter of the conditions of the contract and the judge of its performance, he shall side neither with the owner nor the contractor, but shall use his powers under the contract to enforce its faithful performance by both."

Appellant insists that these facts make the architects parties to, and beneficiaries of, the contract, and therefore insists that the four-year statute of limitations applies. Art. 5527, V.A.T.S. For this contention, appellant relies largely on International Printing Pressmen and Assistants' Union of North America v. Smith, 145 Tex. 399, 198 S.W.2d 729, 736. We do not think this case is authority for appellant's proposition. In the cited case, which was between a labor union and one of its members, it is said:

"It is generally held that the constitution and by-laws of an organization, such as this, constitute a contract between the organization and its members."

This case then cites Shaw v. Bush; Cowart v. Russell, and other cases, and quotes from the former in part. We prefer to give the quote more fully which appears in Cowart v. Russell, by the Commission of Appeals, 135 Tex. 562, 144 S.W.2d 249, 250:

"It is well settled that 'in order for an action to be one for an indebtedness evidenced by or founded upon a contract in writing, as referred to in the above quoted statute, the action must

be between the immediate parties to the contract, or those for whose benefit it was made, or their privies, and the written instrument relied upon must itself contain a contract to do the thing for the nonperformance of which the action is brought.' Shaw v. Bush, Tex. Civ.App., 61 S.W.2d 526, 528, writ refused."

We hold that the suit between the plaintiff and the architect was not between "the immediate parties to the contract, or those for whose benefit it was made, or their privies,—" and, therefore, the trial court was correct in granting the summary judgment. Contracts for the benefit of third persons is discussed in 10A, Texas Jurisprudence, beginning at page 586, and it is clear that the instant contract was not such a one. Point III is, accordingly, overruled.

In support of Point IV, appellant relies largely on a letter written by John P. Foster, one of the architects, dated February 4, 1952, addressed to appellee Bagwell, a copy of which was sent to appellant's attorneys. The letter is as follows:

"* * * We have asked the lawyers and Mr. Haddad not to go into any legal engagement until we have had a chance to satisfy all parties concerned * * * We have explained to Fryer & Milstead (attorneys for plaintiff) that this office will drop immediately all action trying to get this job completed if Mr. Haddad insists on legal action before 1 March 1952.

"The wall, we have explained to both Mr. and Mrs. Haddad, will be fixed by this firm at our expense rather than to get involved in any legal action; please keep this in mind, if there is no other way to work this out."

Appellant says:

"Plaintiffs relied upon the above conduct and representations of defendants, Davis & Foster, and withheld suit until the arbitration collapsed on or about December 3, 1953."

It will be noted that the letter, at most, was a request to withhold action until March 1, 1952. All during the year 1953, legal action was being had by the plaintiffs against Bagwell in the form of the arbitration, above discussed. As is above shown, the house was completed February 21, 1951 and, therefore, the two-year statute of limitation would not have barred the suit until February 21, 1953. This suit was not filed until December 29, 1953. The plaintiff was at liberty to have filed his suit at any time from March, 1952, to February 21, 1953, even if the above request was respected. Furthermore, we do not think the above letter is sufficient to constitute the basis of an estoppel. In Panhandle Const. Co. v. Hood, Tex.Civ.App., 114 S.W.2d 632, 634 (err. ref.), the court, after stating that the general rule is that parties may estop themselves from pleading limitations by words or conduct, goes on to say:

"It is equally well settled that: 'Although a request not to sue may when coupled with other circumstances preclude a party from availing himself of the statute, yet it seems to be generally held that a mere request by the defendant not to sue, without any contract, promise to pay, or agreement not to plead the statute, will not prevent him from taking advantage of the defense thus afforded.' 17 R.C.L. pp. 883, 884."

See also: 53 C.J.S. Limitations of Actions § 25, page 966.

We feel that, under this state of the record, the question of estoppel was not raised, and the court did not err in overruling appellant's motion for same.

The trial court's judgment as between the appellants Haddad and the architects, Davis & Foster, is therefore affirmed.

The judgment of the court as between Haddad and wife and C. R. Bagwell is reversed, and judgment is rendered in favor of the Haddads against C. R. Bagwell as provided in the arbitrator's award.