SAFECO INSURANCE COMPANY OF AMERICA, Appellant,

v.

Dorothy STARIHA, Respondent.

No. C1-831804.

Court of Appeals of Minnesota.

March 28, 1984.

Ellen L. Maas, Lindsay G. Arthur, Jr., Arthur, Chapman & Michaelson, P.A., Minneapolis, for appellant.

Peter W. Riley, DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., Minneapolis, for respondent.

Heard, considered and decided by POPO-VICH, C.J., and WOZNIAK and LANSING, JJ.

## OPINION

POPOVICH, Chief Judge.

This appeal arises from an order denying appellant Safeco Insurance Company of America's (Safeco) motion to vacate an arbitration award reached pursuant to the uninsured motorist provision of respondent Dorothy Stariha's insurance policy with Safeco. Mrs. Stariha was awarded $47,500 plus interest for injuries she received in an automobile accident on December 31, 1980.

Appellant claims that failure to disclose existence of an attorney-client relationship between the neutral arbitrator, Robert Austin, and respondent's attorney, Richard Hunegs of the DeParcq law firm, constitutes "fraud or other undue means" or "evident partiality" requiring vacation of the arbitration award under Minn.Stat. § 572.19.

On September 22, 1983, the trial court ruled that the attorney-client relationship between the neutral arbitrator and respondent's attorney was insignificant and immaterial and did not constitute "fraud or other undue means" or "evident partiality." The court also ruled that Safeco's application to vacate on the grounds of evident partiality was time-barred under the 90-day limitation of Minn.Stat. § 572.19, subd. 2.

The trial court issued its order denying Safeco's motion on October 19, 1983. Safeco now appeals from that order. We affirm.

## FACTS

Respondent Dorothy Stariha was injured in an automobile accident on December 31, 1980. She was a passenger in a car being driven by her husband. They were hit by an uninsured driver, whose fault was never in doubt. Mrs. Stariha made a claim against her insurer, Safeco, for uninsured motorist benefits under her policy which provides $100,000 of coverage.

Mrs. Stariha retained Richard Hunegs of DeParcq, Perl, Hunegs, Rudquist & Koenig, P.A., on April 2, 1982. On June 4, 1982, Mr. Hunegs demanded that Safeco arbitrate Mrs. Stariha's uninsured motorist claim and named James R. Schwebel as his arbitrator. On August 31, 1982, Safeco's attorney, Robert Kettering, appointed an arbitrator for appellant, Peter Van Bergen.

The applicable Safeco policy also provided that the two arbitrators appointed by the parties select the third, neutral arbitrator. On November 10, 1982, Mr. Schwebel and Mr. Van Bergen agreed to appoint Robert M. Austin as the neutral arbitrator. It is this appointment of Mr. Austin as an arbitrator that forms the basis of Safeco's application to vacate.

The extent of the attorney-client relationship complained of is Mr. Austin's representation of the DeParcq firm in a declaratory judgment action against St. Paul Fire and Marine in January 1982 seeking legal defense for the firm for certain lawsuits against it.

Mr. Austin and the DeParcq firm claim that they did not attempt to conceal their

attorney-client relationship. Mr. Austin said that he did not feel it was necessary to disclose his role as attorney "as it would not and did not in any way influence or affect" his judgment.

The arbitration hearing was held on January 27, 1983. As Safeco admitted the liability of the uninsured motorist, only damages were at issue. Mrs. Stariha, represented by Peter W. Riley of the DeParcq firm, presented the testimony of herself and her husband, copies of all medical reports, the insurance policy, Mrs. Stariha's deposition, and a list of special damages. Mrs. Stariha also presented the live testimony of her two treating physicians. Safeco did not present evidence or witnesses.

At the close of evidence, respondent's attorney, argued for an award of $72,500 to Mrs. Stariha. Safeco argued for an award in the amount of $2,000 to $3,000.

The arbitrators met immediately after the hearing and each gave his initial evaluation of the case. Mr. Schwebel, Mrs. Stariha's appointed arbitrator, evaluated her damages at $76,000. Mr. Van Bergen, Safeco's arbitrator, initially evaluated respondent's damages at $21,000 but increased it to $34,000 before any discussion had taken place. Mr. Austin gave his initial evaluation as $50,000 to $55,000.

The arbitrators then continued to review the evidence and discuss the case and unanimously agreed on January 27, 1983, that $47,500 would fairly and fully compensate Mrs. Stariha.

On March 17, 1983, Safeco paid the entire amount of the award, $47,796.71, which includes interest.

On June 1, 1983, counsel for Safeco learned that attorney Austin had an attorney-client relationship with the DeParcq law firm. By motion dated August 8, 1983, Safeco sought vacation of the award on the grounds of "undue means" and "evident partiality."

## ISSUES

1. Whether failure to disclose the existence of an unrelated and remote attorney-client relationship between a neutral arbitrator and counsel for a party to an arbitration proceeding constitutes "fraud or other undue means" or "evident partiality" within the meaning of Minn.Stat. § 572.19.

2. Whether the motion to vacate an arbitration award based upon "evident partiality" must be made within the required 90-day time period of Minn.Stat. § 572.19, even though the moving party was unaware of the alleged "evident partiality" during that 90-day period.

## ANALYSIS

By motion dated August 8, 1983, Safeco sought vacation of the arbitration award on the grounds of "undue means" and "evident partiality" under Minn.Stat. § 572.19, which provides in pertinent part:

Subd. 1. Upon application of a party, the court shall vacate an award where:

(1) The award was procured by corruption, fraud or other undue means;

(2) There was evident partiality by an arbitrator appointed as a neutral or corruption in any of the arbitrators or misconduct prejudicing the rights of any party;

Subd. 2. An application under this section shall be made within 90 days after delivery of a copy of the award to the applicant, except that, if predicated upon corruption, fraud or other undue means, it shall be made within 90 days after such grounds are known or should have been known.

1. Safeco contends that the arbitration award (dated January 27, 1983) was "procured by undue means" and "evident partiality" because neither the neutral arbitrator, Robert Austin, nor counsel for the respondent, Richard Hunegs of the DeParcq law firm, disclosed to Safeco or its counsel the existence of an attorney-client relationship between Austin and the DeParcq law firm. We note that Safeco's allegations of undue means and evident partiality are two separate and distinct claims. However, the same attorney-client

relationship is the basis for each claim and the same analysis applies.

In upholding respondent's arbitration award, the trial court stated that the relationship between Mr. Austin and the DeParcq law firm was "so remote in time and circumstance to the issues arbitrated that it, standing alone, is insufficient evidence of undue means." We agree.

In January 1982, the DeParcq firm, represented by Mr. Austin, brought a motion for declaratory judgment against St. Paul Fire and Marine Insurance Company, asking the court to find an obligation under St. Paul's Professional Liability Insurance to provide the DeParcq firm with a legal defense and pay legal expenses for certain lawsuits brought against DeParcq. The court, in an order dated October 13, 1982, awarded DeParcq judgment against St. Paul Fire and Marine Insurance Company. This was the extent of their relationship.

The United States Supreme Court and the Minnesota Supreme Court have reversed arbitration awards where the nature of the relationship complained of was long-standing and repeated. *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *Northwest Mechanical v. Public Utilities Commission*, 283 N.W.2d 522 (Minn.1979).

Here, the relationship between Mr. Austin and respondent's attorney was neither long-standing nor repeated. Courts have not vacated arbitration awards merely because the neutral party represented counsel for a party in an unrelated proceeding.

The use of commercial arbitration to resolve a wide variety of disputes has grown extensively and forms a significant part of the justice system. The basic intent of arbitration is to discourage litigation and foster voluntary resolution of disputes in a forum created and controlled by the written agreement of the contracting parties. Arbitration is encouraged as a "speedy, informal and relatively inexpensive procedure for resolving controversies." *Crosby-Ironton Federation of Teachers Local*

*1325 v. Independent School District No. 182*, 285 N.W.2d 667, 669 (Minn.1979).

Therefore, persons who act as commercial arbitrators undertake serious responsibilities to the public as well as to the parties. [The American Arbitration Association, *Code of Ethics for Arbitrators in Commercial Disputes* (1977).] Mr. Austin was well qualified to act as a neutral arbitrator. His reputation for fairness and impartiality and his expertise in the evaluation of personal injury damages is well known.

Also, we have reviewed the record and find that the award itself does not evidence any undue means. The arbitrators reviewed the evidence and discussed the case immediately after the arbitration hearing. The three arbitrators reached a unanimous agreement that $47,500 would fairly and fully compensate Mrs. Stariha for all of the damages she suffered.

Based upon the substantive law as applied to the facts of this case, Safeco's claim is without merit. A remote and unrelated attorney-client relationship between the neutral arbitrator and counsel for one of the parties is not a basis to vacate an arbitration award for undue means or evident partiality.

2. Because there is no merit to Safeco's claim of evident partiality, we need not reach the issue of whether this claim is time-barred under the 90-day requirement of Minn.Stat. § 572.19, subd. 2.

3. The *Code of Ethics for Arbitrators in Commercial Disputes* (1977) reflects the prevailing principle that arbitrators should disclose the existence of any interests or relationships which are likely to affect their impartiality or which might reasonably create the appearance that they are biased against one party or favorable to another. Canon II, page 6.

The provisions on disclosure of an attorney-client relationship are intended to be applied realistically so that the burden of detailed disclosure does not become so great that it is impractical for persons in the business world to be arbitrators, there-

by depriving parties of the services of those who might be best informed and qualified to decide particular types of cases.

In a case decided by the United States Supreme Court relating to disclosure, Justice White said in a concurring opinion that arbitrators:

"should err on the side of disclosure" because "it is better that the relationship be disclosed at the outset when the parties are free to reject the arbitrator or accept him with knowledge of the relationship." At the same time, it must be recognized that "an arbitrator's business relationships may be diverse indeed, involving more or less remote commercial connections with great numbers of people." Accordingly, an arbitrator "cannot be expected to provide the parties with his complete and unexpurgated business biography," nor is an arbitrator called upon to disclose interests or relationships which are merely "trivial." (Concurring opinion in *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 151–152, 89 S.Ct. 337, 340–41, 21 L.Ed.2d 301, 1968.)

■ It is with these considerations in mind that we adopt the following standards prospectively, in accordance with the *Code of Ethics for Arbitrators in Commercial Disputes:*

## STANDARDS

A. Persons who are requested to serve as arbitrators should, before accepting, disclose:

(1) Any direct or indirect financial or personal interest in the outcome of the arbitration;

(2) Any existing or past financial, business, professional, family or social relationships which are likely to affect impartiality or which might reasonably create an appearance of partiality or bias. Persons requested to serve as arbitrators should disclose any such relationships which they personally have with any party or its lawyer, or with any individual whom they have been told will be a witness. They should also disclose any such relationships involving members of their families or their current employers, partners or business associates.

B. Persons who are requested to accept appointment as arbitrators should make a reasonable effort to inform themselves of any interests or relationships described in Paragraph A above.

C. The obligation to disclose interests or relationships described in Paragraph A above is a continuing duty which requires a person who accepts appointment as an arbitrator to disclose, at any stage of the arbitration, any such interests or relationships which may arise, or which are recalled or discovered.

D. Disclosure should be made to all parties unless other procedures for disclosure are provided in the rules or practices of an institution which is administering the arbitration. Where more than one arbitrator has been appointed, each should inform the others of the interests and relationships which have been disclosed.

E. In the event that an arbitrator is requested by all parties to withdraw, the arbitrator should do so. In the event that an arbitrator is requested to withdraw by less than all of the parties because of alleged partiality or bias, the arbitrator should withdraw unless either of the following circumstances exists:

(1) If an agreement of the parties, or arbitration rules agreed to by the parties, establishes procedures for determining challenges to arbitrators, then those procedures should be followed; or

(2) If the arbitrator, after carefully considering the matter, determines that the reason for the challenge is not substantial, and that he or she can nevertheless act and decide the case impartially and fairly, and that withdrawal would cause unfair delay or expense to another party or would be contrary to the ends of justice.

## DECISION

We affirm the trial court's ruling and hold that the existence of an unrelated and remote attorney-client relationship between the neutral arbitrator and counsel for one of the parties to the arbitration proceedings is not evidence of undue means *or* evident partiality under Minn.Stat. § 572.- 19. The facts do not rise to a level of fraud, corruption or undue means. We affirm.

Affirmed.