**TUCO INC. and Southwestern Public Service Company, Appellants,**

v.

**BURLINGTON NORTHERN RAILROAD COMPANY and the Atchison, Topeka & Santa Fe Railway Company, Appellees.**

No. 07–95–0110–CV.

Court of Appeals of Texas, Amarillo.

Oct. 27, 1995.

Rehearing Overruled Dec. 13, 1995.

Locke, Purnell, Rain, Harrell, Michael H. Collins, Michael J. Boydston, Cynthia Keely Timms, Carr, Fouts, Hunt & Wolfe, Dallas, Donald M. Hunt, Lubbock, Hinkle, Cox, Eaton, Coffield & Hensley, Paul W. Eaton, Richard R. Wilfong, Charles Watson, Jr., Amarillo, for appellants.

Conant, Whittenburg, Whittenburg & Schachter, George Whittenburg, Charles G. White, Amarillo, Steptoe & Johnson, Samuel M. Sipe, Jr., Washington, DC, Freeborn & Peters, Harry L. DeLung, Jr., Chicago, IL, for appellees.

Before DODSON, BOYD and QUINN, JJ.

BOYD, Justice.

In this appeal, TUCO Inc. (TUCO) and Southwestern Public Service Company (SPS), appellants, challenge rendition of summary judgment in favor of appellees, Burlington Northern Railroad Co. and the Atchison, Topeka & Santa Fe Railway Co., confirming an arbitration award. The arbitration at issue concerned the proper construction to be given to specific portions of long term shipping contracts between TUCO and Burlington Northern Railroad Company and TUCO and Atchison, Topeka & Santa Fe Railway Company. Because the relevant facts and issues are the same as to each of the appellees as recognized by their submission of a joint brief, we refer to them collectively as the carriers. In their challenge, appellants present three basic arguments why the award is invalid: 1) the arbitration panel disregarded the applicable law, 2) the panel exceeded its authority, and 3) there was evident partiality on the part of the neutral arbitrator. TUCO presents these arguments in seven points of error and SPS presents five points. For the reasons discussed herein, we reverse the judgment of the trial court.

The relationships between the parties are not complex. TUCO purchases coal mined in the state of Montana and sells it to SPS to fuel its electricity generating plants in the Texas Panhandle. In 1984, TUCO and the carriers entered into agreements for shipment of the coal through the end of 2002. Each of these agreements were reduced to writing and included a merger clause providing that the writing represented the entire agreement between the parties. Because of the protracted life of the contracts, each included provisions for two types of periodic adjustments to the rate paid by TUCO. The first type of adjustment was an automatic quarterly adjustment based on an index published by the Interstate Commerce Commission. This index, and the adjustments based on it, specifically excluded changes due to carrier productivity.

The contracts also provided for "rate reviews." The rate reviews were not automatic but could be invoked by either party in October of 1987 and 1990, and every two to four years thereafter. These rate reviews provided a mechanism for reviewing the performance of the automatic adjustments and accounting for the effect of changes in the carriers' productivity. It is the allocation of the benefits flowing from the carriers' gains in productivity that form the basis of the present dispute.

The agreements provided that disputes "with respect to any specific section under this agreement" would be resolved by arbitration conducted pursuant to the Texas General Arbitration Act, Tex.Rev.Civ.Stat.Ann. art. 224–238 (Vernon 1973 & Supp.1995). The agreements further provided that TUCO and the carriers were to each select an arbitrator and that those party arbitrators were to mutually choose a third arbitrator. The agreements stated that they were to be governed by, and construed in accordance with, Texas law except as to matters related to common carrier obligations governed by federal law.

In 1987, the parties successfully conducted a rate review without resort to any of the dispute resolution provisions of the contracts. TUCO initiated a second rate review in 1990. During this review the parties were unable to reach an agreement on several issues, including the sharing of productivity gains. The dispute on productivity gains focused on whether the agreement provided for different treatment of "movement specific" and "system wide" productivity gains or whether they were to be treated the same. Generally stated, the carriers take the position that the agreement was that all productivity gains were to be allocated eighty percent to the carriers and twenty percent to TUCO, while TUCO contends that, under the terms of the written contract, the eighty percent/twenty percent distribution was limited to "movement specific" productivity gains and that the sharing of "system wide" productivity gains consisted of the carriers receiving all of the benefit of system wide improvements in productivity made between rate reviews but that all of these benefits were to be shifted to it at the time of the rate review.

Being unable to resolve their dispute, TUCO invoked the arbitration clauses calling for arbitration of the interpretation of section 10 of the written contract specifically listing subsections 10.0 "Intent" and 10.2 "Rate Review" as the provisions to be construed and further setting out ten specific issues to be resolved. The letter stated that TUCO reserved the right to submit additional issues relating to the interpretation of section 10. TUCO selected retired attorney Richard Hardy of Florida as its arbitrator and the carriers selected Baltimore attorney Emried Cole as its arbitrator. The parties each submitted a list of potential candidates for the third arbitrator's position. Two names appeared on both lists, one of which was George Beall, also a Baltimore attorney. After discussions with Beall concerning his ability to serve and consultation with the parties, Hardy and Cole agreed on Beall as the final arbitrator.

After his selection but before the commencement of the arbitration hearings, Beall accepted Thomas F. Mullan as a client. Mullan had previously been represented by the Baltimore firm of Venable, Baetjer, Howard & Civiletti, the same firm with which appellees' arbitrator, Cole, was associated. Because Venable, Baetjer could not represent Mullan due to a conflict of interest, Mullan's

former attorney at Venable, Baetjer either suggested Beall as a possible replacement or concurred with Mullan's inquiry about using Beall. Beall's representation of Mullan was not brought to the attention of the parties to the arbitration proceeding.

At a week-long arbitration hearing, the parties submitted extensive written and oral evidence. Several weeks after the evidentiary portion of the hearing, and shortly before the closing presentations, TUCO's attorney became aware of what it characterizes as the referral from Venable, Baetjer to Beall. It made no objections to Beall's continued participation. By a two-to-one vote, with Hardy dissenting, the panel's award was favorable to the carriers on most issues, including the allocation of benefits arising from increased productivity. The panel found that the documents executed by the parties did not reflect their true intent on the issue of productivity sharing because of a mistake on the part of the drafters of the writing. In his dissent attacking the panel's award, Hardy asserted the award failed to follow the applicable law, went beyond the panel's authority and was the result of actual bias on the part of Beall.

Appellants brought suit in district court seeking to vacate the award, an order directing the parties to rearbitrate "all appropriate issues," and for attorneys fees and costs. The carriers counterclaimed for confirmation of the award and attorneys fees. Both sides made motions for summary judgment based on extensive summary judgment evidence. The trial court overruled appellants' motion, granted the carriers' motion and rendered judgment confirming the award. Hence, this appeal.

Before addressing appellants' specific points of error, we must initially determine what law is applicable to this case. Section 22 of the written contract contains a general statement that it is to be construed according to Texas law except as to matters relating to common carrier obligations. Section 12, concerning arbitration of disputes under the agreement, provides that disputes "shall be arbitrated pursuant to the provisions of the Texas General Arbitration Act." Tex.Rev. Civ.Stat.Ann. art. 224–238 (Vernon 1973 & Supp.1995). In addition to these provisions, we must determine the effect of the Federal Arbitration Act (FAA). 9 U.S.C. §§ 1–16.

■ The FAA declares provisions in contracts to arbitrate disputes irrevocable and enforceable if the contracts involve maritime transactions or interstate commerce. 9 U.S.C. § 2. The act creates a federal body of law of arbitrability, *Volt Information Sciences Inc. v. Bd. of Trustees of Stanford Univ.*, 489 U.S. 468, 475, 109 S.Ct. 1248, 1253–54, 103 L.Ed.2d 488 (1989); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Batton v. Green*, 801 S.W.2d 923, 927 (Tex.App.—Dallas 1990, no writ), the purpose of which is to overcome courts' traditional refusal to enforce arbitration agreements, *Allied–Bruce Terminix Companies, Inc., v. Dobson*, 513 U.S. ——, ——, 115 S.Ct. 834, 838, 130 L.Ed.2d 753, 762 (1995). It does not, however, completely preempt state law concerning arbitration, nor does it alter the substantive law to be applied by the arbitrator in resolving the underlying dispute, such as contract interpretation. *Volt*, 489 U.S. at 477, 109 S.Ct. at 1255.

■ The FAA displaces state law only to the extent the state law is in conflict with the federal act's purpose of enforcing the parties' contractual obligation to arbitrate. *Id.* at 477, 109 S.Ct. at 1255. The FAA does not dictate any particular form or procedural rules of arbitration different from those agreed to by the parties. *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. ——, 115 S.Ct. 1212, 131 L.Ed.2d 76 (1995); *see also Lozano v. Maryland Casualty Co.*, 850 F.2d 1470 (11th Cir.1988), *cert. denied*, 489 U.S. 1018, 109 S.Ct. 1136, 103 L.Ed.2d 197 (1989) (applying state rather than federal law allowing award to be vacated for evident partiality). As the United States Supreme Court stated in *Volt*:

> Just as parties may limit by contract the issues to be arbitrated, (citation omitted), so too may they specify by contract the rules under which that arbitration will be conducted. Where parties choose state rules, enforcing those rules is fully consistent with the FAA.

489 U.S. at 479, 109 S.Ct. at 1256.

■ Without any doubt, these contracts concerning the transportation of millions of

tons of coal from Montana to Texas involve interstate commerce and are within the scope of the FAA. However, we believe the issues raised in this appeal are governed by Texas law, which, as applied to these facts, is consistent with, and not preempted by, the FAA. Article 237 of the Texas General Arbitration Act addresses the basis on which arbitration awards may be vacated. That article is substantially similar to section 10 of the Federal Arbitration Act. As relevant here, both allow arbitration awards to be vacated when the arbitrators exceed their powers or, with a distinction noted below, there existed evident partiality by an arbitrator.

The authority conferred on the arbitration panel by the agreements to arbitrate depends on contract interpretation, a state law issue. Section 22 of the written agreements establishes that the state law to be applied is that of Texas. The parties agree to the applicability of the Texas General Arbitration Act, the application of which does not burden the goals of the FAA. Therefore, our determination of this appeal is governed by Texas law. However, it must also be noted that the Texas General Arbitration Act is based on the Uniform Arbitration Act, as are the arbitration statutes of 33 other states and the District of Columbia. Article 238–4 of the Texas Act directs that it shall be construed to promote uniformity with the law of other states enacting equivalent provisions.

 The judgment we are asked to review is a summary judgment and must, accordingly, be reviewed under the standards set forth by our supreme court in *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546 (Tex.1985). Those standards are:

1. The movant has the burden of showing there is no genuine issue of material fact and she is entitled to judgment as a matter of law;

2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true;

3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor.

*Id.* at 548–49. Appellees emphasize the rule that arbitration awards are favored and every presumption must be indulged in favor of upholding an award. *Bailey and Williams v. Westfall*, 727 S.W.2d 86, 90 (Tex.App.—Dallas 1987, writ ref'd n.r.e.). However, as we have recently stated, in a summary judgment proceeding such rules must yield to the degree they conflict with the presumptions in favor of a non-movant. *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 798 (Tex.App.—Amarillo 1995, writ denied); *see also Brozo v. Shearson Lehman Hutton, Inc.*, 865 S.W.2d 509, 510–11 (Tex.App.—Corpus Christi 1993, no writ); *but cf., Bailey and Williams*, 727 S.W.2d at 90.[1]

 An arbitration award has the same effect as a judgment from a court of last resort, *City of Baytown v. C.L. Winter*, 886 S.W.2d 515, 517 (Tex.App.—Houston [1st Dist.] 1994, writ den.), and are not subject to appellate review. *Commonwealth Coatings v. Continental Casualty*, 393 U.S. 145, 149, 89 S.Ct. 337, 339, 21 L.Ed.2d 301 (1968). An award will not be set aside for a mere mistake of fact or law. *Anzilotti v. Gene D. Liggin, Inc.*, 899 S.W.2d 264, 266 (Tex.App.—Houston [14th Dist.] 1995, no writ); *Island on Lake Travis, Ltd. v. Hayman Co.*, 834 S.W.2d 529, 533 (Tex.App.—Austin 1992), *judgment set aside pursuant to settlement*, 848 S.W.2d 84 (Tex.1993). It is because of this deference that judicial scrutiny of arbitration awards focus on the integrity of the process rather than the propriety of the result. For this reason we initially address appellants' points asserting evident partiality by the neutral arbitrator.

 In TUCO's third point and SPS's fourth point, they assert the existence of genuine issues of material fact on the question of evident partiality by arbitrator Beall. As described above, appellants' claims of evident partiality are based on the referral of a

---

1. Appellees additionally cite *Smith v. Barnett*, 373 S.W.2d 762 (Tex.Civ.App.—Dallas 1963, no writ), and *Couey v. Arrow Coach Lines, Inc.*, 288 S.W.2d 192 (Tex.Civ.App.—Austin 1956, no writ), as examples of Texas courts approving summary judgments of arbitration awards. However, those cases were decided long before *Nixon* and do not discuss the presumptions required under Texas summary judgment practice.

client by arbitrator Cole's law firm, Venable, Baetjer, Howard & Civiletti to Beall after he was selected as an arbitrator and shortly before the arbitration hearing was to begin. This argument depends largely on appellants' position that Cole and Hardy were "party" arbitrators whose interests were aligned with the party that chose them. They describe Beall as the only neutral arbitrator and contend that any relationship he had with one of the "party" arbitrators was equivalent to a relationship with a party.

As support for its description of the role of the arbitrators, appellant TUCO refers, not to the text of the written agreements, but to an affidavit of Robert Nailling, one of TUCO's attorneys, describing the method for selecting arbitrators set out in the agreements. Parenthetically, we note TUCO refers to the affidavit of its attorney rather than the written agreements, even though those agreements are part of the record and no distinction between the duties of the arbitrators can be drawn from the texts.[2]

However, appellees do not challenge appellants' description of the differing roles of the party appointed arbitrators and the third, or "neutral" arbitrator. Appellees also point to the deposition testimony of Hardy that he viewed his role as that of an advocate. As the parties do not challenge the propriety of bias on the part of the party appointed arbitrators, that issue is not before us. It should be noted that the parties' acceptance of different roles among the arbitrators is an additional reason why this case must be resolved under the Texas General Arbitration Act rather than the Federal Arbitration Act. This is so because only the Texas Act appears to recognize the distinction made by the parties while the FAA allows an award to be vacated based on evident partiality of any arbitrator.[3] *See Barcon Assoc., Inc. v. Tri-County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214, 216 (1981) (discussing apparent partiality of party appointed arbitrator).

It appears that Texas courts have directly addressed the question of evident partiality under article 237 on only one occasion. In *City of Baytown v. C.L. Winter,* the court rejected a claim of evident partiality based on the arbitration award alone. The court stated that the party seeking vacature of an award must "prove the existence of facts which would establish a reasonable impression of the arbiter's partiality to one party." *Id.* at 520. It gave as examples cases where the arbitrator had an interest in the outcome of the proceeding, or a relationship with one of the parties. Citing *Johnson v. Korn,* 117 S.W.2d 514, 519–21 (Tex.Civ.App.—El Paso 1938, writ ref'd); *House Grain Co. v. Obst,* 659 S.W.2d 903, 907–08 (Tex.App.—Corpus Christi 1983, writ ref'd n.r.e.). However those cases involved common-law arbitration rather than the Texas General Arbitration Act.

The case of *Monday v. Cox,* 881 S.W.2d 381 (Tex.App.—San Antonio 1994, writ denied), applied the Texas General Arbitration Act but appears to address an allegation of actual bias rather than evident partiality. One of the facts cited by the court in rejecting the claim of bias was that the arbitrator was unaware of the relationship. *Id.* at 384.

In *Babcock & Wilcox v. PMAC,* 863 S.W.2d 225 (Tex.App.—Houston [14th Dist.] 1993, writ denied), the court, applying the

---

2. The relevant portions of the written agreements provide:

 The party requesting arbitration shall notify the other of the name of the arbitrator of its choosing, and such other party shall, within ten (10) days thereafter, select an arbitrator and notify the party desiring arbitration of the name of such arbitrator. The two (2) arbitrators shall, within ten (10) days after the appointment of the second arbitrator, choose the third, and that failing, any party may make application within two (2) days thereafter to the Chief Judge of the United States District Court for the Northern District of Texas, who shall appoint the third arbitrator.... All arbitrators appointed pursuant to this Section shall be third party individuals qualified by education, knowledge and experience to pass on the matters submitted for arbitration and shall not be employed by nor regularly receive remuneration from either party other than for arbitration services.

3. Article 237, section A(2) of the Texas Act requires vacation of an arbitration award where "there was evident partiality by an arbitrator appointed as a neutral," while section 10(a)(2) of the FAA permits vacation of an award "[w]here there was evident partiality or corruption in the arbitrators, or either of them."

FAA, held that the arbitrator's offers to each party to serve as an arbitrator in future cases was insufficient to show evident partiality. *Id.* at 234. Earlier cases consider bias or partiality of an arbitrator in terms of Texas common law arbitration. For example, *House Grain Co. v. Obst* involved an arbitrator's failure to disclose his relationship to a party. The court applied what it described as an appearance of bias or impropriety standard. It opined that a relationship between a party and the arbitrator's employer several years prior to the arbitration was insufficient to create an appearance of bias or impropriety. The court stated a relationship must be ongoing and direct rather than speculative and remote and on that basis distinguished *Commonwealth Coatings v. Continental Casualty.* The court also found the arbitrator's ignorance of his prior relationship to a party to be significant. *House Grain,* 659 S.W.2d at 908. *See also Johnson,* 117 S.W.2d at 519–21.

Under this very limited body of Texas jurisprudence on the subject, and mindful that article 237 was enacted as part of a uniform act, we now consider the authorities from other jurisdictions. Both parties discuss the case of *Commonwealth Coatings v. Continental Casualty Co.* That case also involved a commercial contract dispute where a panel of three arbitrators were selected in the same manner as provided in the present contracts. The third arbitrator was an engineering consultant who had been hired by one of the parties on an irregular basis over a four to five year period. This relationship was not disclosed to the other party. The court discussed section 10 of the FAA permitting vacature of awards for evident partiality. The opinion of the court analogized that standard to the standards applied to judges and jurors, deciding that "we should, if anything, be even more scrupulous to safeguard the impartiality of arbitrations than judges, since ... [arbitrators] ... are not subject to appellate review." 393 U.S. at 149, 89 S.Ct. at 339. Although there was no charge of actual bias, the court held that the arbitrator's failure to disclose the relation-

ship was sufficient to establish "evident partiality" under the FAA. Justice White, joined by Justice Marshall, wrote in concurrence expressing the view that an arbitrator's business relationship with a party would not disqualify the arbitrator if the parties are informed of the relationship in advance or if the relationship is trivial.[4] 393 U.S. at 150, 89 S.Ct. at 340.

Appellants additionally rely on *Schmitz v. Zilveti,* 20 F.3d 1043 (9th Cir.1994); *Wheeler v. St. Joseph Hospital,* 63 Cal.App.3d 345, 133 Cal.Rptr. 775 (1976); *Barcon Assoc., Inc. v. Tri–County Asphalt Corp.,* 86 N.J. 179, 430 A.2d 214 (1981); *Kern v. 303 East 57th St. Corp.,* 204 A.D.2d 152, 611 N.Y.S.2d 547 (1994); *Ossman v. Ossman,* 166 A.D.2d 896, 560 N.Y.S.2d 557 (1990); and *Richco Structures v. Parkside Village, Inc.,* 82 Wis.2d 547, 263 N.W.2d 204 (1978). However, none of these cases apply any jurisdiction's version of the Uniform Arbitration Act and are consequently of little precedential value. That fact in no way limits our consideration of the reasoning expressed in those opinions.

Of the cases cited by appellees, three involve application of statutes based on the Uniform Arbitration Act: *John E. Reid & Assoc. v. Wicklander–Zulawski & Assoc.,* 255 Ill.App.3d 533, 194 Ill.Dec. 232, 627 N.E.2d 348 (1993); *Lozano, supra;* and *Safeco Ins. Co. v. Stariha,* 346 N.W.2d 663 (Minn.App. 1984). The opinion in *John E. Reid & Associates* addresses facts significantly different from those of the present case. There, the existence of a business relationship between the arbitrator and the parents of a witness who was also a member of one party's law firm was disclosed before the arbitration. The issue before us is the effect of Beall's failure to disclose.

In *Lozano,* the Eleventh Circuit applied Florida's version of the Uniform Arbitration Act to find that membership of the neutral arbitrator and the party's arbitrator as limited partners in a partnership was insufficient to show evident partiality. Distinguishing *Continental Coatings,* the court pointed to

---

4. There the court held that the relationship was "significant" based on the payment of $12,000 in

fees over the four to five year period.

the inability of a limited partner to "curry favor" with another limited partner. 850 F.2d at 1471. Without any direct financial relationship between the limited partners, the court found no evident partiality. *Id.* at 1472.

In *Safeco,* the Minnesota court of appeals held that a neutral arbitrator's failure to disclose his prior representation of the firm representing one of the parties did not establish evident partiality. However, we find significant that the opinion adopted, for prospective application, the Code of Ethics for Arbitrators in Commercial Disputes (1977). Those standards require full disclosure of an arbitrator's relationships which "might reasonably create an appearance of partiality or bias." Under those standards the duty is a continuing one that extends to any relationship which may arise or be discovered at any stage of the arbitration. 346 N.W.2d at 667.

█ Following the mandate of article 238–4 concerning uniformity of construction of statutes based on the Uniform Arbitration Act, and the standards under which we must review summary judgments, we hold that appellees did not establish, as a matter of law, the absence of evident partiality. Without adopting the specific standards set out in *Safeco,* we find that a neutral arbitrator is under a duty to disclose any relationship which might reasonably create an appearance of partiality or bias. An appearance of partiality or bias is not reasonable if it is based on a relationship that is remote or has no affect on the arbitrator's interest in the outcome of the arbitration or, in the words of Justice White, it is "trivial."

When the parties were considering Beall's choice as the neutral arbitrator, he disclosed the fact that he had been hired by Venable, Baetjer as an expert witness on two prior occasions. The parties investigated the extent of these transactions before accepting Beall as the neutral arbitrator. Beall was aware of appellees' interest in his relationship with Venable, Baetjer. Regardless of the amount of influence Mullan's former attorney at Venable, Baetjer had in Mullan's decision to hire Beall as his new attorney, Beall's statement thanking Cole for the case "you folks were kind enough to send over" is evidence that Beall believed that Venable, Baetjer exercised some influence over Mullan's choice of a new attorney. The summary judgment record does not preclude a finding that the possibility of Venable, Baetjer directing additional clients to Beall would reasonably create an appearance of partiality or bias. Consequently, summary judgment on the issue of evident partiality was improper. TUCO's point three and SPS's point four are sustained in part. Those points are overruled inasmuch as they assert error in the trial court's failure to render judgment for appellants.

Our sustention of appellants' points of error concerning evident partiality require that we reverse the judgment of the trial court and remand for further proceedings. Our disposition of those points obviates the need to address appellants' remaining points of error.